# Illinois Official Reports

## Supreme Court

---

### *In re Detention of New*, 2014 IL 116306

---

Caption in Supreme Court:
*In re* DETENTION OF JOHN NEW, JR. (The People of the State of Illinois, Appellant, v. John New, Jr., Appellee).

Docket No.
116306

Filed
November 20, 2014

Held
(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)
Experts' diagnoses of sexual attraction to adolescent males (referred to as paraphilia not otherwise specified or hebephilia) should not have been admitted at a jury trial for civil commitment under the Sexually Violent Persons Commitment Act without a *Frye* hearing to determine the general acceptance of this diagnosis in the relevant scientific community; and judicial notice was not appropriate where the record was inadequate for the making of this determination—remand for *Frye* hearing.

Decision Under Review
Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Michael McHale, Judge, presiding.

Judgment
Appellate court judgment affirmed.
Cause remanded.

Counsel on Appeal

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro and Carolyn E. Shapiro, Solicitors General, and Michael M. Glick and Erica Seyburn, Assistant Attorneys General, of Chicago, of counsel), for the People.

Stephen F. Potts, of Des Plaines, for appellee.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

¶ 1    At issue in this case is whether the circuit court of Cook County erred in admitting certain expert testimony regarding a diagnosis of hebephilia at respondent's civil commitment trial without first conducting an evidentiary hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (*Frye* hearing) to determine whether the diagnosis had been generally accepted as a valid mental disorder in the relevant scientific community. For the reasons that follow, we hold that the diagnosis of hebephilia is subject to the *Frye* standards for the admissibility of novel scientific evidence, and that a hearing is necessary in this case to determine its general acceptance.

¶ 2                              BACKGROUND

¶ 3    In March 2005, the State filed a petition to commit respondent, John New, Jr., to the Department of Human Services (DHS) as a sexually violent person under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq*. (West 2004)). The petition alleged that respondent had a history of committing sexually violent offenses, citing respondent's 1987 conviction of two counts of aggravated criminal sexual assault against a 12-year-old boy, and his 1995 conviction of aggravated criminal sexual assault and two counts of criminal sexual assault against a 14-year-old boy. Respondent was sentenced to seven years in prison for the 1987 conviction, and was sentenced to two consecutive terms of seven and six years respectively for the 1995 conviction. The petition further alleged that respondent had been diagnosed with "paraphilia not otherwise specified, [paraphilia NOS], sexually attracted to adolescent males," that his condition affected his emotional or volitional capacity which predisposed him to commit acts of sexual violence, and that there was a substantial probability that he would engage in future acts of sexual violence.

¶ 4    Prior to trial, respondent filed a motion *in limine* to bar the expert testimony from the State's evaluators regarding their diagnosis. Respondent contended that the experts' opinions failed to meet the *Frye* standards for the admissibility of novel scientific evidence. Specifically, respondent argued that in recent years the diagnosis, "paraphilia NOS, sexually attracted to adolescent males," which is otherwise referred to in the academic literature as

- 2 -

hebephilia, has been applied in civil commitment proceedings as the basis for an accepted mental condition. Respondent maintained that the purported mental condition was not listed as an accepted mental disorder in an authoritative reference manual, was not grounded in sound scientific principles, and was not generally accepted as a valid diagnosis within the psychiatric and psychological communities. In support of his motion, he attached several exhibits, including numerous articles criticizing a proposal to include the diagnosis as a qualifying mental disorder in the next edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM).

¶ 5    In response, the State argued that the diagnosis was made in reliance upon the DSM category for paraphilia NOS, that there was nothing novel about the use of the DSM as a methodology, that paraphilia NOS is a frequently diagnosed mental disorder in sexually violent persons commitment proceedings, and that it has gained general acceptance by professionals who assess sexually violent offenders. The trial court denied respondent's motion, concluding that the expert testimony was admissible without the need for a *Frye* hearing. The court did not preclude respondent from cross-examining the State's experts based upon any scientific disagreement regarding the validity of the diagnosis.

¶ 6    At trial, Dr. Fogel testified that he is a licensed forensic psychologist. In that capacity, he conducted a clinical evaluation of respondent to determine if he was a candidate for commitment under the Act. As part of that evaluation, Dr. Fogel reviewed respondent's master file, which contained information regarding respondent's incarceration, his medical file, and police reports regarding his various criminal offenses. Additionally, Dr. Fogel interviewed respondent in 2004 and 2010.

¶ 7    Dr. Fogel considered respondent's sexual offense history. In 1980, at the age of 17, respondent was convicted of contributing to the delinquency of a minor and received supervision. In 1987, he was convicted of aggravated criminal sexual assault of a 12-year-old boy. While on mandatory supervised release for that conviction, he was convicted for soliciting a young male prostitute in his early 20s. Thereafter, in 1995, he was convicted of one count of aggravated criminal sexual assault and two counts of criminal sexual assault of a 14-year-old boy. Respondent was 32 years old at the time. One month prior to his release from the Department of Corrections, respondent received a sexual misconduct ticket for soliciting a 19-year-old male for sex. This individual had recently been transferred from the juvenile detention facility and was reportedly young looking. While awaiting trial in DHS custody, respondent requested to share a room with a recently arrived detainee whom he had known in prison. Dr. Fogel noted documentation indicating that respondent had been the detainee's basketball coach when the detainee was 11 years old. Dr. Fogel was of the opinion that respondent continued to fixate on this individual.

¶ 8    Dr. Fogel testified regarding respondent's admitted attraction to younger-looking men and respondent's feelings of powerlessness over his urges and sexual fantasies about younger men. Dr. Fogel noted that respondent had a history of befriending younger males, often overestimating their actual ages, purchasing items for them, and having sexual fantasies about them. Respondent described himself to Dr. Fogel at times as a passive recipient of the advances, and at other times admitted that he sought out certain individuals with a history of sexual abuse or individuals that were underprivileged or vulnerable in some way. According

to Dr. Fogel, respondent reported a preference for tall, athletic, African-American, young-looking men without facial or chest hair.

¶ 9     Following the evaluation, Dr. Fogel diagnosed respondent with paraphilia NOS, sexually attracted to adolescent males or alternatively sexually attracted to early pubescent males, ranging from age 11 to 14 years old. In formulating a diagnosis, Dr. Fogel relied upon the Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (DSM-IV-TR), which was the current version of the DSM at the time. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision, DSM-IV-TR (2000). The manual, which is published by the American Psychiatric Association, provides an authoritative categorical classification of mental disorders.

¶ 10     Dr. Fogel explained that a paraphilia, as identified in the DSM, refers to a general class of sexual disorders. There are two general criteria for establishing a paraphilic disorder related to children or other nonconsenting persons. The first criteria requires that over a period of at least six months the individual experiences recurrent, intense, sexually arousing fantasies, urges or behaviors generally involving children or other nonconsenting persons. The second criteria requires either that the sexual urges or fantasies cause the individual clinically significant distress or impairment, or the individual has acted on the sexual urges.

¶ 11     Dr. Fogel testified that a paraphilia NOS diagnosis indicates that the individual meets the general overall diagnostic criteria for a paraphilia, but the condition fails to fall into one of the specifically listed paraphilic disorders in the DSM, such as voyeurism, sadism, or pedophilia. Dr. Fogel then identified the specific target of the paraphilia in respondent's case as a sexual attraction to early pubescent males. Dr. Fogel expressed that respondent meets the criteria for that diagnosis based on his sexual conduct with the 12- and 14-year-old boys, and his admitted fantasies focusing on early pubescent individuals during his incarceration, as well as fantasies about those adolescents he observed on television.

¶ 12     On cross-examination, Dr. Fogel agreed that there is a debate about how the paraphilia NOS diagnosis should be applied within his field. He acknowledged the controversy over whether there should be a category in the DSM for those individuals with a sexual arousal to early pubescent males within the age range of 11 to 14, which has been described as hebephilia. He explained that unlike hebephilia, pedophilia is a listed diagnosis in the DSM. Pedophilia requires an interest in *pre*pubescent children, and provides a general age category as including children 13 years old and younger. Dr. Fogel stated that the problem with that limitation is that a 13 year old is generally not prepubescent. Therefore, there was a debate about how the DSM should be modified.

¶ 13     At the time of trial, Dr. Fogel was aware of a proposal to modify the language of the pedophilia diagnosis to include hebephilia, the attraction to adolescent individuals in the 11 to 14 year old age range. Dr. Fogel acknowledged that his diagnosis of paraphilia NOS, sexually attracted to early pubescent males, or hebephilia, was essentially the same as the diagnosis proposed for inclusion in the upcoming fifth edition of the DSM (DSM-5). He agreed that there was no specific listing of hebephilia as a paraphilic disorder in the DSM.

¶ 14     With respect to respondent's probability of reoffending, Dr. Fogel administered various tests and considered certain additional factors which can increase and mitigate the risk of reoffending. Based upon these measurements, Dr. Fogel determined that respondent

presented a high risk of recidivism. Accordingly, it was his opinion that it was substantially probable that respondent would commit acts of sexual violence in the future.

¶ 15 Dr. Robert Brucker testified that he is a licensed clinical psychologist qualified as an expert in the area of sex offender evaluation and risk assessment and treatment. In December 2005, he was assigned to conduct a clinical evaluation of respondent to determine whether he was a candidate for commitment. Dr. Brucker reviewed respondent's master file, performed psychological testing, and conducted an interview with him in January 2006.

¶ 16 As part of his evaluation, Dr. Brucker also relied upon the DSM-IV-TR as an authoritative reference manual in his field. Relevant here, Dr. Brucker diagnosed respondent with paraphilia NOS, sexually attracted to adolescent males, non-exclusive type. He explained that a paraphilia is essentially a deviant sexual interest. To establish a paraphilic disorder, an individual needs to have recurrent, intense urges, arousals, fantasies or behaviors toward a sexually deviant interest. These urges need to be present for at least six months, and the individual needs to have acted on the urges or fantasies, or they have to have caused significant clinical stress or impairment.

¶ 17 Dr. Brucker noted that respondent exhibited a clear sexual interest toward adolescent males between the ages of 12 and 15. It was Dr. Brucker's opinion that the disorder impacted respondent's emotional or volitional capacity because despite having received legal consequences for his behaviors respondent continued to engage in paraphilic, sexually deviant, behavior. This suggested to Dr. Brucker that respondent was unable to control this behavior. In addition, Dr. Brucker utilized various assessment tools along with other risk factors to predict that respondent was at a high risk for reoffending.

¶ 18 Dr. Brucker acknowledged on cross-examination that the paraphilia NOS category of diagnosis is a miscellaneous one and that there is nothing specifically in the DSM about an attraction to adolescent males being a paraphilia. He testified that paraphilia NOS exists because it would not be practical for the DSM to identify and itemize each separate deviant sexual interest. The ones that tend to be the most common are the ones listed, such as pedophilia or exhibitionism or voyeurism. He acknowledged that the DSM provides a list of examples under the paraphilia NOS category, and that those examples may not be common paraphilias, but he stated that the list of examples is not intended to be comprehensive. Dr. Brucker additionally agreed that the term "garbage can diagnosis" has been commonly used to refer to the paraphilia NOS category of diagnoses, but he did not believe that it was a useless diagnosis.

¶ 19 Dr. Kirk Witherspoon testified as an expert in the field of clinical psychology on behalf of respondent. He performed his evaluation of respondent in January 2010. As part of his evaluation, he reviewed materials regarding respondent's sexual offense history, family history, incarceration history, and the evaluations of Fogel and Brucker. Additionally, Dr. Witherspoon interviewed respondent and administered various psychological tests.

¶ 20 Dr. Witherspoon was of the opinion that respondent's prior sexual offense history was not indicative of a mental disorder because an attraction to adolescents is not a psychopathology. Dr. Witherspoon stated that it is statistically normal for adults to be sexually attracted to sexually immature adolescents. Although it is illegal to act on those feelings with someone under the age of consent, which varies by state, the fact that something is illegal does not make it pathological. According to Dr. Witherspoon,

"paraphilia NOS, sexually attracted to adolescent males," is not a generally accepted diagnosis.

¶ 21   In assessing respondent's risk of reoffending, Dr. Witherspoon utilized various assessment tools. Based on the outcome of these tests, respondent had a moderately high risk of reoffending which would decrease over 10 years to almost no risk.

¶ 22   At the conclusion of the evidence, the jury found respondent to be a sexually violent person under the Act, and the trial court committed him to the Department of Human Services for care and treatment in a secured facility. Respondent appealed. While the case was pending on appeal, in 2013, the DSM-5 was published. The DSM-5 does not list hebephilia as a paraphilic disorder or as an expansion of the specifically listed pedophilic disorder. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, DSM-5 *Paraphilic Disorders* 685-705 (2013).

¶ 23   On appeal, respondent argued, in part, that the trial court erred in admitting the testimony of Dr. Fogel and Dr. Brucker without first conducting a *Frye* hearing. The appellate court agreed, holding that a diagnosis of a novel condition is subject to the general acceptance test under *Frye* (2013 IL App (1st) 111556, ¶ 59), and that as the proponent of the evidence, the State failed to meet its burden of showing its general acceptance. *Id.* ¶ 61. Accordingly, the court reversed and remanded the case for a *Frye* hearing, and, if necessary, a new trial. *Id.* ¶ 62. We subsequently allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2013).

¶ 24                                                    ANALYSIS

¶ 25   In Illinois, the admission of scientific evidence is governed by the *Frye* standard (*In re Commitment of Simons*, 213 Ill. 2d 523, 529 (2004) (citing *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)), which has now been codified by the Illinois Rules of Evidence: "Where an expert witness testifies to an opinion based on a new or novel scientific methodology or principle, the proponent of the opinion has the burden of showing the methodology or scientific principle on which the opinion is based is sufficiently established to have gained general acceptance in the particular field in which it belongs." Ill. R. Evid. 702 (eff. Jan. 1, 2011).

¶ 26   The purpose of the *Frye* test is to exclude new or novel scientific evidence that undeservedly creates "a perception of certainty when the basis for the evidence or opinion is actually invalid." *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 78 (2002), *abrogated on other grounds by Simons*, 213 Ill. 2d at 530. Imposition of the test serves to prevent the jury from simply adopting the judgment of an expert because of the natural inclination of the jury to equate science with truth and, therefore, accord undue significance to any evidence labeled scientific. *People v. McKown*, 226 Ill. 2d 245, 254 (2007). We review *de novo* a trial court's determination of whether a *Frye* hearing is necessary and whether there is general acceptance in the relevant scientific community. *Simons*, 213 Ill. 2d at 531.

¶ 27                                          Testimony Subject to *Frye*

¶ 28   Initially, we must consider whether expert testimony involving a purported mental diagnosis is the type of scientific evidence subject to the screening function served by the

*Frye* test. In *Donaldson*, this court explained that the *Frye* test does not concern an expert's ultimate conclusion but, instead, focuses on the underlying scientific principle, test, or technique used to generate that conclusion. *Donaldson*, 199 Ill. 2d at 77; see also *In re Marriage of Alexander*, 368 Ill. App. 3d 192, 197 (2006) (when an expert opinion is derived solely based upon observation and experience, that opinion is generally not considered scientific evidence subject to the *Frye* test). Relying on this court's opinion in *Donaldson*, the State maintains that a diagnosis is never subject to *Frye* because it is not a scientific technique or test used to diagnose but, rather, an expert's conclusion based on training and experience.

¶ 29    Although this court has not had occasion to consider specifically whether expert testimony involving a purported mental diagnosis is the type of scientific evidence that could be subject to the *Frye* test, our appellate court has previously applied the *Frye* standard to expert testimony related to a syndrome or diagnosis. In *People v. Shanahan*, 323 Ill. App. 3d 835, 839 (2001), the court held that the expert's testimony related to battered child syndrome was subject to the *Frye* standard. In *Bernardoni v. Industrial Comm'n*, 362 Ill. App. 3d 582, 594 (2005), the court subjected proffered expert testimony on multiple chemical sensitivity to the *Frye* standard to determine whether it was a clinically valid diagnosis. In comparison, in *Noakes v. National R.R. Passenger Corp.*, 363 Ill. App. 3d 851, 856 (2006), the court held there was no need for a *Frye* hearing where there was no dispute that carpal tunnel syndrome existed as a valid diagnosis.

¶ 30    Additionally, in the context of civil commitment proceedings, in *McGee v. Bartow*, 593 F.3d 556 (7th Cir. 2010), the Seventh Circuit acknowledged that "a particular diagnosis may be so devoid of content, or so near-universal in its rejection by mental health professionals, that a court's reliance on it to satisfy the 'mental disorder' prong of the statutory requirements for commitment would violate due process." *McGee*, 593 F.3d at 577.

¶ 31    Furthermore, the United States Supreme Court in *Kansas v. Hendricks*, 521 U.S. 346 (1997), recognized the importance of distinguishing between the dangerous sexual offender subject to civil commitment, and other dangerous, but typical, recidivists, who are more properly dealt with through the criminal system. *Hendricks*, 521 U.S. at 360. The Court found that this distinction was made possible, in part, by the "presence of what the 'psychiatric profession itself classifie[d] ... as a serious mental disorder.' " *Kansas v. Crane*, 534 U.S. 407, 412 (2002) (quoting *Hendricks*, 521 U.S. at 360).

¶ 32    Thus, in the context of civil commitment, courts have acknowledged the importance of establishing an underlying mental condition recognized by the mental health community, and have acknowledged that a diagnosis may be so unsupported by science that it should be excluded from consideration by the trier of fact. These same concerns are relevant to our *Frye* standard.

¶ 33    Here, the question raised by respondent is whether paraphilia NOS, sexual attraction to early adolescent males, otherwise known as hebephilia, is a diagnosable mental condition based upon legitimate scientific principles and methods. Contrary to the State's assertion, respondent does not seek to test the conclusions drawn by the experts who testified here based on their clinical observation and experience that respondent exhibits the characteristics of a particular condition. Rather, the science behind the condition is at issue, as evidence by the supporting documentation presented by respondent regarding flawed methodology. See,

*e.g.*, Joseph J. Plaud, *Are There "Hebephiles" Among Us? A Response to Blanchard et al. (2008)*, 38 Archives of Sexual Behav. 326 (2009) (setting forth "multiple methodological issues that preclude a call for the establishment of hebephilia as a diagnostic entity in the DSM-V"); Thomas K. Zander, *Adult Sexual Attraction to Early-Stage Adolescents: Phallometry Doesn't Equal Pathology*, 38 Archives of Sexual Behav. 329 (2009) ("Any new or expanded DSM diagnosis that can have implications as profound as the one proposed by Blanchard *et al*. requires a broad base of replicated research (not just one study with a glaring methodological omission), as well as extensive field testing to ensure its interrater reliability, and a full and open debate about its conceptual validity."). This is the type of scientific evidence that the analytic framework established by *Frye* was designed to address.

¶ 34    We next consider whether the diagnosis is predicated on new or novel science. Although not always easy to identify, we have held that generally, scientific evidence is new or novel if it is " 'original or striking' " or does " 'not resembl[e] something formerly known' " or used. *Donaldson*, 199 Ill. 2d at 79 (quoting Webster's Third New International Dictionary 1546 (1993)). The State represents that the term hebephilia has been previously applied in many contexts in the scientific literature as a descriptive label to classify a sexual attraction to adolescents. However, its use as the basis for a mental condition is of more recent origin as the debate surrounding its proposed inclusion and subsequent rejection in the DSM-5 demonstrates.

¶ 35    As Dr. Fogel testified, the same diagnosis was the subject of a recent proposal to be included in the DSM-5 based on the research of Ray Blanchard and his colleagues. Ray Blanchard *et al.*, *Pedophilia, Hebephilia, and the DSM-V*, 38 Archives of Sexual Behav. 335 (2009). The proposal sought to include hebephilia as a listed category of paraphilic disorder, or as an extension of the already specified disorder, pedophilia. *Id*. The authors noted that studies have "demonstrated the utility of specifying a hebephilic group, at least for research purposes." *Id*. Blanchard acknowledged that the term "has not come into widespread use, even among professionals who work with sex offenders." *Id*. at 336.

¶ 36    The proposal drew vigorous criticism about its scientific validity and methodological flaws. Opponents contended that the hebephilia diagnosis would dramatically expand or add "to the DSM diagnostic categories of mental disorders without any evidence or reasoning that those who would be newly included under the mental disorder rubric can be properly categorized as mentally disordered." Philip Tromovitch, *Manufacturing Mental Disorder by Pathologizing Erotic Age Orientation: A Comment on Blanchard et al*. *(2008)*, 38 Archives of Sexual Behav. 328 (2009); See also Gregory DeClue, *Should Hebephilia Be a Mental Disorder? A Reply to Blanchard et al. (2008)*, 38 Archives of Sexual Behav. 317 (2009); Joseph J. Plaud, *Are There "Hebephiles" Among Us? A Response to Blanchard et al. (2008)*, 38 Archives of Sexual Behav. 326 (2009); Thomas K. Zander, *Adult Sexual Attraction to Early-Stage Adolescents: Phallometry Doesn't Equal Pathology*, 38 Archives of Sexual Behav. 329 (2009); Allen Frances & Michael B. First, *Hebephilia Is Not a Mental Disorder in the DSM-IV-TR and Should Not Become One in DSM-5*, 39 J. Am. Acad. Psychiatry & L. 78, 84-85 (2011) ("[T]he very preliminary studies conducted by a few research groups should not be construed to indicate that hebephilia has any solid scientific support. Hebephilia is not an accepted mental disorder that can be reliably diagnosed.").

¶ 37      Ultimately, the proposed diagnosis was recently rejected by the Board of Trustees of the American Psychiatric Association for inclusion in the DSM-5. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, DSM-5 *Paraphilic Disorders* 685-705 (2013). The State recognizes the recent debate over whether hebephilia is a diagnosable mental condition. Accordingly, we conclude that the diagnosis of hebephilia as a mental condition is sufficiently novel for purposes of *Frye.*

¶ 38                                            General Acceptance

¶ 39      Having determined that the particular testimony is subject to *Frye*, we next consider the issue of its general acceptance in the psychological and psychiatric communities. Ill. R. Evid. 702 (eff. Jan. 1, 2011). A court may determine the general acceptance in either of two ways: "(1) based on the results of a *Frye* hearing; or (2) by taking judicial notice of unequivocal and undisputed prior judicial decisions or technical writings on the subject." *McKown*, 226 Ill. 2d at 254; see also *Simons*, 213 Ill. 2d at 531 (we may "consider not only the trial court record but also, where appropriate, sources outside the record, including legal and scientific articles, as well as court opinions from other jurisdictions"). General acceptance does not require unanimity, consensus, or even a majority, but does require something more than a scientific principle, technique or methodology that is experimental or of dubious validity. *Donaldson*, 199 Ill. 2d at 88. The proponent of the evidence bears the burden of establishing general acceptance. Ill. R. Evid. 702 (eff. Jan. 1, 2011).

¶ 40      We first consider whether we can determine that hebephilia is generally accepted as a valid diagnosable mental condition by taking judicial notice of unequivocal and undisputed writings on the subject. In the trial court, the State offered no literature in response to respondent's supporting documentation revealing a lack of scientific support and widespread opposition to the validity of this particular diagnosis from those in the psychology and psychiatric communities.

¶ 41      In this court, the State now asserts that, despite the controversy, scientific publications unequivocally show that hebephilia is generally accepted as a valid diagnosable mental condition. The State relies upon research by Blanchard and others that supported Blanchard's own proposal for the inclusion of the diagnosis in the DSM-5. Blanchard, *Pedophilia*, *supra*, at 347; Ray Blanchard, *The Fertility of Hebephiles and the Adaptionist Argument Against Including Hebephilia in DSM-5*, 39 Archives of Sexual Behav. 817, 818 (2010); Robert Prentky & Howard Barbaree, *Commentary: Hebephilia—A Would-be Paraphilia Caught in the Twilight Zone Between Prepubescence and Adulthood*, 39 J. Am. Acad. Psychiatry & L. 506, 509 (2011).

¶ 42      Noticeably absent from the State's discussion is the fact that Blanchard's proposal to include hebephilia as a diagnosis was rejected in the DSM-5. As an undisputed authoritative reference manual in the field of psychology and psychiatry, it is necessary to address the rejection in our consideration of whether we can take judicial notice that hebephilia is generally accepted as the basis for a mental condition. In doing so, we recognize that an expert in a civil commitment proceeding is not required to rely upon the DSM or establish a consensus in the scientific community to establish that an individual has "a mental disorder" as a predicate to civil commitment. The DSM has cautioned that psychiatry is not "an exact science." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental

Disorders, 5th Edition, DSM-5 25 (2013). Nevertheless, numerous experts do apply and rely upon the DSM as an authoritative source to support civil commitment. See, *e.g.*, *In re Commitment of Fields*, 2014 IL 115542, ¶ 22; *In re Commitment of Dodge*, 2013 IL App (1st) 113603, ¶ 9; *In re Detention of Ehrlich*, 2012 IL App (1st) 102300, ¶ 25.

¶ 43    The DSM diagnostic criteria and classification of mental disorders are applied by experts to legitimize a diagnosis as being grounded at some level in sound scientific principles. See, *e.g.*, *Hendricks*, 521 U.S. at 360 (the diagnosis of pedophilia, what the "psychiatric profession itself classifie[d] as a serious mental disorder," helped legitimize the diagnosis and distinguish between a dangerous sexual offender whose mental abnormality subjects him to civil commitment from the dangerous, but typical, recidivist who is more properly dealt with through the criminal laws). As the DSM recognizes, "when the presence of a mental disorder is the predicate for a subsequent legal determination (e.g., involuntary civil commitment), the use of an established system of diagnosis enhances the value and reliability of the determination." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, DSM-5 25 (2013).

¶ 44    Indeed, despite the State's attempt to distance itself now from the DSM in assessing general acceptance, the State relied upon the experts' use of the DSM to establish general acceptance before the trial court. The State argued "[t]he methodology in question is the use of the DSM-IV-TR to make a diagnosis and that is generally accepted." The State asserted that the DSM is an "an authoritative reference manual that has long gained general acceptance by professionals who assess sexually violent offenders."

¶ 45    Most importantly, the experts in this case relied upon the DSM to support their opinion that respondent has a valid diagnosable mental condition. Regardless of the terminology and labels used by the experts, Dr. Fogel acknowledged that the diagnosis the experts relied upon at trial in evaluating respondent mirrored the proposal by Blanchard to expand the diagnosis of pedophilia *to* cover sexual attraction to early pubescent youngsters. See Blanchard, *Pedophilia*, *supra*. As illustrated by the materials presented by respondent, the proposal appears to have had more critics than supporters. Its rejection for inclusion in the very authoritative manual upon which the State sought to rely in the trial court to establish general acceptance raises more questions than it settles. The conflicting literature and the DSM lead us to conclude that we cannot take judicial notice of the general acceptance of the hebephilia diagnosis.

¶ 46    Alternatively, the State maintains that the issue of general acceptance has been resolved in prior judicial decisions. In support, it cites cases that have admitted a paraphilia NOS diagnosis, but where the expert specified a target or preference other than hebephilia as a basis for civil commitment. See, *e.g.*, *In re Detention of Lieberman*, 2011 IL App (1st) 090796, ¶ 53 (stating that the diagnosis of "paraphilia NOS, nonconsent has been the basis for numerous probable cause or sexually violent person findings in this state and other jurisdictions"); *In re Detention of Stenzel*, 827 N.W.2d 690, 702 (Iowa 2013) (paraphilia NOS, nonconsent); *In re D.H.*, 797 N.W.2d 263, 266 (Neb. 2011) (same).

¶ 47    With respect to the paraphilia NOS cases cited by the State, we find these cases do not provide a basis for this court to take judicial notice that the specifically diagnosed condition here is generally accepted. The experts in this case did not rely on merely a paraphilia NOS diagnosis but, rather, identified a specific sexual attraction to early adolescent males. Part of

the debate here involves whether that diagnosis fits within the rubric of paraphilia NOS or whether the paraphilia NOS diagnosis is being misused in this context.

¶ 48    Additionally, the State cites other cases in which experts have relied upon a paraphilia diagnosis specifically related to sexual attraction to early adolescents as a basis for civil commitment, but where the court has not subjected the diagnosis to a *Frye* hearing. See, *e.g.*, *In re Commitment of Hardin*, 2013 IL App (2d) 120977, ¶ 9 (diagnosed with paraphilia, NOS with a preference for young teenage girls); *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶ 7 (diagnosed with hebephilia, described as a sexual disorder whereby the person is aroused by pubescent females); *In re Care & Treatment of Williams*, 253 P.3d 327, 330 (Kan. 2011) (diagnosed with paraphilia NOS, with hebephilia tendencies). As has been repeatedly observed in the context of *Frye*, relying solely on prior judicial decisions to establish general acceptance can be a "hollow ritual" if the underlying issue of scientific acceptance has not been adequately litigated. (Internal quotation marks omitted.) *Simons*, 213 Ill. 2d at 537.

¶ 49    Furthermore, neither Illinois case that has addressed the admissibility of a paraphilic diagnosis under a *Frye* analysis specifically concerned the particular paraphilia diagnosed here. See *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶¶ 60-61 (paraphilia, NOS sexually attracted to nonconsenting females otherwise known as a paraphilic disorder related to rape); *In re Detention of Hayes*, 2014 IL App (1st) 120364, ¶ 35 (relying on *Melcher* to establish that it was appropriate to take judicial notice that paraphilia NOS, nonconsent is generally accepted). Notably, in holding that the diagnosis of paraphilia NOS, nonconsent met the *Frye* standard, these cases relied upon *McGee v. Bartow*, 593 F.3d 556 (7th Cir. 2010). After describing the diagnosis as a paraphilic disorder related to rape, and reviewing the relevant literature, the court in *McGee* concluded, "the diagnosis of a paraphilic disorder related to rape is not so unsupported by science that it should be excluded absolutely from consideration by the trier of fact." *McGee*, 593 F.3d at 580. As this case does not involve the same diagnosis, these cases do not provide a basis for this court to take judicial notice that the particular diagnosis in this case is generally accepted.

¶ 50    Additionally, the State cites federal cases brought pursuant to the Adam Walsh Child Protection and Safety Act of 2006 (18 U.S.C. § 4248 (2006)) in which the respondents were diagnosed with hebephilia. See *United States v. Caporale*, 701 F.3d 128 (4th Cir. 2012); *United States v. Carta*, 592 F.3d 34 (1st Cir. 2010). In those cases, the courts considered whether the diagnosis was legally sufficient to support a finding that hebephilia constituted a "serious mental illness, abnormality, or disorder" under the federal statute, and not the scientific acceptance of the diagnosis in the mental health community. *Caporale*, 701 F.3d at 136-37; *Carta*, 592 F.3d at 39-40. The circuit courts were not asked to rule on the admissibility of the expert's testimony and, if they were, the courts would be held to a different standard under the Federal Rules of Evidence. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

¶ 51    We are also particularly mindful that all of these opinions were issued prior to the court having the opportunity to address the impact of the current status of the DSM, and its consideration and rejection of this proposed diagnosis as a specific category of paraphilia or as an extension of pedophilia. Thus, we find that these cases do not represent the unequivocal or undisputed viewpoint necessary for us to take judicial notice here. As the State conceded

at oral argument, where the court has an insufficient basis to determine general acceptance, a *Frye* hearing is necessary. *McKown*, 226 Ill. 2d at 254.

¶ 52                                    CONCLUSION

¶ 53    In sum, we hold that the diagnosis of hebephilia is subject to *Frye*. Additionally, we hold that this court has an inadequate basis to determine whether this diagnosis has gained general acceptance in the psychological and psychiatric communities, and that this determination cannot be resolved on judicial notice alone. As explained, we do not purport to decide the issue of whether the diagnosis has been generally accepted. Rather, we affirm the judgment of the appellate court, which remanded the case to the circuit court for a *Frye* hearing to determine if hebephilia is a generally accepted diagnosis in the psychiatric and psychological communities and, if necessary, for a new trial.

¶ 54    Appellate court judgment affirmed.

¶ 55    Cause remanded.