2020 IL App (2d) 180905
No. 2-18-0905
Opinion filed June 4, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF NICHOLAS R. BAUER | ) | Appeal from the Circuit Court |
| | ) | of Lee County. |
| | ) | |
| | ) | No. 09-MR-64 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. Nicholas R. Bauer, | ) | Daniel A. Fish, |
| Respondent-Appellant.) | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1 Respondent, Nicholas R. Bauer, appeals the trial court's orders (1) finding, after a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), that the diagnosis of hebephilia has been generally accepted in the relevant scientific community and (2) finding him to be a sexually violent person (SVP). Hebephilia is defined as "the strong, persistent sexual interest by adults in pubescent children who are in early adolescence, typically ages 11-14 and showing Tanner stages 2 to 3 of physical development." Wikipedia, https://en.wikipedia.org/wiki/Hebephilia (last visited June 3, 2020). We affirm.

¶ 2 I. BACKGROUND

¶ 3 Respondent was convicted in 2007 of one count of indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2006)) and sentenced to six years in the Illinois Department of Corrections

(IDOC), to be followed by one year of mandatory supervised release. In 2009, the State filed a petition for an order of commitment pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2008)), seeking an order of detention pursuant to section 30(a) of the Act and commitment to the Illinois Department of Human Services for control, care, and treatment pursuant to section 40 of the Act. The State alleged, *inter alia*, that respondent had been evaluated by Dr. Ray Quackenbush, a clinical psychologist, who diagnosed respondent as suffering from the mental disorders of (1) "Paraphilia, Not Otherwise Specified, with Mixed Features" and (2) "Personality Disorder, Not Otherwise Specified, with Antisocial Features." In 2015, the State amended its petition, deleting any reference to Quackenbush and his diagnoses. Instead, the State cited the diagnoses of two other doctors: (1) Dr. Richard Travis diagnosed respondent as having "Other Specified Paraphilic Disorder, Sexually [*sic*] Arousal To Early Pubescent Females, Nonexclusive Type" and (2) Dr. Angeline Stanislaus diagnosed respondent as suffering from "Other Specified Paraphilic Disorder—Hebephilia." Paraphilia is defined as "a pattern of recurring sexually arousing mental imagery or behavior that involves unusual and especially socially unacceptable sexual practices (such as sadism or pedophilia)." Merriam- Webster Online Dictionary, https://www.merriam-webster.com/dictionary/paraphilia (last visited June 3, 2020).

¶ 4    Respondent filed a motion *in limine* seeking to bar the testimony of the State's evaluators or to subject portions of it to a hearing pursuant to *Frye*, 293 F. 1013. Respondent amended his motion in light of the State's amended petition, deleting certain evaluators and adding Travis and Stanislaus. According to respondent, both Travis and Stanislaus submitted "a diagnosis of hebephilia." Respondent argued that, pursuant to our supreme court's decision in *In re Detention of New*, 2014 IL 116306, a *Frye* hearing was required to determine whether the diagnosis of

hebephilia (defined as a preferential sexual interest in pubescent (early stages of puberty) children) had gained general acceptance in the psychological and psychiatric communities.

¶ 5  Both the State and respondent agreed that a *Frye* hearing was necessary to evaluate Travis's and Stanislaus's diagnoses, and a hearing was held in October 2016. After hearing testimony from State's witnesses Dr. David Thornton and Dr. James Cantor, and respondent's witness Dr. John Fabian, the trial court found that "there is more than a reasonable subset, there is a substantial subset of the psychologists and psychiatrists who as a substantial part of their work evaluate, treat or research sex offenders who accept hebephilia as a diagnosis." Thus, the trial court denied respondent's motion to exclude at trial the evidence of the diagnosis.

¶ 6  The matter then proceeded to a bench trial on the commitment petition.  The State  presented the testimony of Stanislaus and Travis, both of whom found that respondent met the criteria to be committed as a sexually violent person. Respondent presented the testimony of Fabian. The trial court found respondent to be a sexually violent person and committed respondent to the Illinois Department of Human Services. This appeal followed.

¶ 7                                    II. ANALYSIS

¶ 8 Respondent first contends that the trial court erred in finding that  the  diagnosis  of hebephilia has gained general acceptance in the relevant scientific community and that expert reliance on the diagnosis was reasonable.

¶ 9 The admission of scientific evidence is governed by the *Frye* standard (*New*, 2014 IL 116306, ¶ 25), which is now codified in the Illinois Rules of Evidence:

> "Where an expert witness testifies to an opinion based on a new or novel scientific methodology or principle, the proponent of the opinion has the burden of showing the methodology or scientific principle on which the opinion is based is sufficiently established

to have gained general acceptance in the particular field in which it belongs." Ill. R. Evid. 702 (eff. Jan. 1, 2011).

The *Frye* test is used to exclude new or novel scientific evidence that undeservedly creates "a perception of certainty when the basis for the evidence or opinion is actually invalid" (internal quotation marks omitted) and serves to prevent a factfinder from simply adopting the judgment of an expert because of the natural inclination to equate science with truth and, therefore, accord undue significance to any evidence labeled as scientific. *New*, 2014 IL 116306, ¶ 26. "General acceptance" does not mean universal acceptance; it does not require that the methodology in question be accepted by unanimity, consensus, or even by a majority of experts. *In re Commitment of Simons*, 213 Ill. 2d 523, 530 (2004). It is sufficient that the underlying method used to generate an expert's opinion is reasonably relied upon by experts in the relevant field. *Id.* We review *de novo* a trial court's determination of whether a *Frye* hearing is necessary and whether there is general acceptance in the relevant scientific community. *New*, 2014 IL 116306,

¶ 26. In conducting this *de novo* review, a reviewing court may consider the trial court record and, where appropriate, sources outside the record, including legal and scientific articles, as well as judicial opinions from other jurisdictions. *Simons*, 213 Ill. 2d at 531.

¶ 10 In *New*, our supreme court determined that "the diagnosis of hebephilia is subject to *Frye*" and remanded the cause "for a *Frye* hearing to determine if hebephilia is a generally accepted diagnosis in the psychiatric and psychological communities." *Id.* ¶ 53. The parties here agreed that a *Frye* hearing was necessary, and we have not found any reported cases that have examined the diagnosis of hebephilia under *Frye* since the supreme court addressed the issue in *New*. Thus, we will review the trial court's decision as it relates to the *Frye* hearing.

¶ 11 At the *Frye* hearing, both Thornton and Cantor testified that the diagnosis of hebephilia is generally accepted by experts who assess and treat sexual disorders. Thornton testified that the term "hebephilia" was first used in 1955 by a researcher named Glueck who was researching, among other things, sexual offenders. Thornton defined hebephilia as "a sexual preference for children in the early stage of puberty, Tanner stages II and III," such that the person "is more attracted to children at that stage of development than they are to either adults or to younger children." He distinguished hebephilia (primary interest in pubescent children) from pedophilia (primary interest in prepubescent children).

¶ 12 Thornton testified that, according to his training and experience, hebephilia is generally accepted by the majority of people in the scientific community who specialize in the assessment and treatment of sex offenses and who work clinically with paraphilias or research paraphilias as mental disorders and mental conditions. In forming his opinion, Thornton relied on clinical experience, published research, and his own research. The main studies on hebephilia had come from Canadian laboratories, including the Kurt Freund Laboratory at the Center for Addiction and Mental Health (CAMH), which Thornton described as the "standard of excellence" in the field.

¶ 13 Cantor testified that the International Classification of Diseases (ICD-10), which is published by the World Health Organization (WHO), is generally accepted by experts who assess or research the assessment of sexual offenders and is used "essentially everywhere outside of the United States." Hebephilia could be diagnosed using the ICD-10, although the ICD-10 included it under its definition of "paedophilia," which describes "attraction to prepubescent or early pubescent children."

¶ 14 Cantor testified that there were 40 peer-reviewed studies on hebephilia, 34 of which made specific comparisons between pedophiles, hebephiles, and teleiophiles (those attracted to adults).

He testified that, of those 34, 32 demonstrated "a statistically significant difference between—between the hebephiles and the teleiophiles or demonstrated that there were no significant differences between the pedophiles and the hebephiles."

¶ 15 Cantor also reviewed the report that Fabian had produced for the proceedings, including Fabian's discussion regarding a review by Karen Franklin of literature on hebephilia. Franklin's review categorized 117 documents on the diagnosis of hebephilia as "pro," "con," or "other." Cantor had read each of the documents and he noted that Franklin was "a bit ambiguous" in her analysis and often "grossly misrepresented what the authors were actually saying." Of the 117 documents listed, Franklin found 27 to be "pro" diagnosis and 60 "anti" diagnosis, with the rest "other;" Cantor's analysis was 56 "pro" and 43 "anti," with the rest "other. Looking at only the 65 peer-reviewed documents in the list, Franklin found 19 "pro" and 20 "anti," while Cantor found 41 "pro" and 12 "anti." Cantor also reviewed an additional 16 peer-reviewed articles not included in Franklin's list, all of which he found to be "pro" diagnosis.

¶ 16 Cantor opined that the mental condition of hebephilia was "almost unanimously accepted" in the scientific community of experts in mental health who, as a substantial part of their work, assess or research the assessment of sexual offenders, as was the general acceptance of hebephilia under the Diagnostic and Statistical Manual of Mental Disorders (DSM). He also stated that he was not in favor of SVP legislation and had spoken out against it in the media.

¶ 17 Respondent's expert, Dr. Fabian, opined that hebephilia was not a generally accepted diagnosis. Fabian described the relevant scientific community as made up of three subgroups: (1) forensic-expert psychologists, neuropsychologists, and psychiatrists; (2) "folks that have a quasi-forensic clinical background who are doing assessments and treatments in the community"; and (3) "folks like Dr. Cantor who are in a lab—laboratory in a university or government setting

who will do research." He found that "the study of hebephilia is most scientific and most credible in the research domain, and that research is coming out of CAMH."

¶ 18 Fabian opined that hebephilia was not generally accepted by forensic experts, in group 1, but was generally accepted by researchers, in group 3, although he thought that it was more accepted in Canada than in the United States. As to clinicians, in group 2, Cantor explained that the "few people" that he knew "do not adhere to it." He thought that, in the area of SVP civil commitments, experts who testify for the State "do condone, agree, and support *** this diagnosis," while experts who often testify for respondents do not, "so I don't know if that's general acceptance or not." However, he did state that clinicians working in the SVP civil- commitment field were "typically" trained in issues related to hebephilia but that it was up to each clinician to decide "whether they will then incorporate this information as to, yes, I believe there's enough to diagnose or not with hebephilia."

¶ 19 Respondent first argues that the trial court assessed the relevant scientific community too broadly in that it included factors and scientific knowledge on the diagnosis of hebephilia from outside the United States. This argument is directed against the testimony of Thornton, who testified that, outside the United States and Canada, the ICD-10 is the authoritative text regarding diseases and mental disorders. The ICD-10 included a diagnosis of hebephilia within its definition of "paedophilia," which describes "attraction to prepubescent or early pubescent children."

¶ 20 Respondent cites no authority to support the claim that, for *Frye* purposes, the relevant scientific community is limited to persons residing and publishing in the United States. In *Simons*, our supreme court looked to judicial decisions from other states in its analysis of the general acceptance of actuarial risk assessment in a sexually-dangerous-person proceeding. The

court analyzed *Roeling v. State*, 880 So. 2d 1234 (Fla. Dist. Ct. App. 2004), which found that actuarial risk assessment satisfied the general-acceptance standard of *Frye*. The court noted that the *Roeling* court had "exhaustively examined" the relevant academic literature, including Robert D. Hare, *Psychopathy and the Predictive Validity of the PCL-R.: An International Perspective*, 18 Behav. Sci. & L. 623 (2000). *Simons*, 213 Ill. 2d at 538 (citing *Roeling*, 880 So. 2d at 1239). The court had no issue with a sister court's examination of and reliance on an explicitly international perspective in making a *Frye* determination (left unsaid was whether any of the other literature included analysis of international studies), and we find no basis for making a contrary decision here. Thus, the trial court here did not err in considering scientific information and factors from outside the United States.[1]

¶ 21 Respondent next contends that a diagnosis of hebephilia is not valid. Respondent correctly asserts that the American Psychiatric Association (APA) rejected a proposal to include the diagnosis of "pedohebephilia" (sexual preference for both prepubescent and early pubescent children, with pedophilia and hebephilia subtypes) in the DSM-5, the most recent edition of the DSM. See *New*, 2014 IL 116306, ¶ 42 (noting the "proposal to include hebephilia as a diagnosis was rejected in the DSM-5"). However, respondent then claims that the DSM-5 is "the authoritative text governing the assessment and diagnosis of sex offenders" and that Fabian testified that all professionals in his field "are bound by" it. First, respondent fails to direct us to any evidence that any professionals are "bound" by the DSM. Second, such a claim is refuted by our supreme court, which, while noting that DSM-5 is "*an* undisputed authoritative reference

_____

[1] We further note that, in his brief, respondent cites with approval a 2001 vote against the adoption of the diagnosis of hebephilia by the *International* Association for the Treatment of Sex Offenders.

manual in the field of psychology and psychiatry" and that "numerous experts do apply and rely upon the DSM as an authoritative source to support civil commitment," also noted that "an expert in a civil commitment proceeding is *not required* to rely upon the DSM." (Emphases added.) *Id.* The court has noted the importance of the DSM's consideration and rejection of the hebephilia diagnosis. See *id.* ¶ 51. However, while important, it is not paramount, let alone dispositive, regarding the issue of general acceptance of the diagnosis.

¶ 22 Our review of the evidence leads us to conclude that the diagnosis of hebephilia is generally accepted in the psychological and psychiatric communities. The concept of hebephilia has been in existence for 65 years, and its diagnosis has been included in the ICD-10, which, according to Cantor, is generally accepted by experts who assess or research the assessment of sexual offenders and is used "essentially everywhere outside of the United States." Both Thornton and Cantor testified that the diagnosis of hebephilia was generally accepted in the scientific community of experts in mental health who, as a substantial part of their work, assess or research the assessment of sexual offenders ("almost unanimously accepted," according to Cantor).

¶ 23 Fabian included in his report Franklin's list of literature addressing the issue of hebephilia. Of the documents that Franklin found to take a position on hebephilia, almost 33% were found to be "pro" diagnosis. Cantor's analysis of these same documents resulted in a score of 56% "pro" diagnosis. The results were even more in favor of the diagnosis when only peer-reviewed documents were considered; Franklin found an almost-even split, while Cantor found 77% supporting the diagnosis (82% when considering peer-reviewed documents not on Franklin's list).

¶ 24 While Fabian opined that the diagnosis of hebephilia was not generally accepted in the scientific community, his description of acceptance within the various subgroups thereof demonstrates otherwise. He testified that researchers generally accepted the diagnosis and that

forensic experts did not. As to clinicians, Cantor testified that the "few people" that he knew "do not adhere to it." Further, while experts that usually testify for the State "do condone, agree, and support *** this diagnosis," experts that often testify for respondents do not, "so I don't know if that's general acceptance or not." Fabian did not identify a lack of general acceptance. He identified a significant group of experts that do accept the diagnosis.

¶ 25 Respondent spends a great deal of his brief emphasizing Fabian's testimony attacking the methodology of some of the studies supporting the diagnosis of hebephilia. However, "[u]nder the *Frye* standard, the trial court is not asked to determine the validity of a particular scientific technique." *Simons*, 213 Ill. 2d at 532. A trial court is not required to conduct a two-part inquiry into both the reliability of the methodology and its general acceptance; the reliability of an expert's methodology is naturally subsumed by the inquiry into its general acceptance in the relevant scientific community. *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 81 (2002), *overruled on other grounds*, *Simons*, 213 Ill. 2d at 532. Once it is determined that a methodology is generally accepted in the applicable community, it follows that it has achieved a sufficient degree of reliability and validity to cross the threshold of admissibility. *In re Commitment of Sandry*, 367 Ill. App. 3d 949, 966 (2006).

¶ 26 During oral argument, it was pointed out that the WHO released a proposed revision to the ICD-10 that was accepted by WHO member states in May 2019. The new edition of the ICD, ICD-11, will go into effect on January 1, 2022. This court ordered supplemental briefing on the issue of general acceptance in light of the ICD-11.

¶ 27 The ICD-11 has eliminated the classification of "paedophilia" that the ICD-10 listed under its nine types of "Disorders of Sexual Preference." The ICD-11 does list "pedophilic disorder" within its five specific "Paraphilic Disorders"; this disorder concerns only a sexual interest in

"prepubertal children" and makes no mention of early pubescent children, as "paedophilia" did. In addition, the ICD-11 added a general category of paraphilic disorders called "Other paraphilic disorder involving non-consenting individuals" (OPD) that focuses on an interest in individuals "who are unwilling or unable to consent [to sexual activity] but that is not specifically described in any of the other named Paraphilic Disorders categories."

¶ 28  Our review of the ICD-11 revisions does not affect our conclusion that that the diagnosis  of hebephilia is generally accepted in the psychiatric and psychological communities. First, as we have already stated, the DSM-5, while important, "is not paramount, let alone dispositive, regarding the issue of general acceptance of the hebephilia diagnosis." *Supra* ¶ 21.  This applies as well to the ICD. No one publication or source is dispositive on the question of general acceptance.

¶ 29 Second, even the deletion of the ICD-10 reference to "early pubescent children"—and the failure to make any reference to hebephilia—cannot be conclusively read to mean that hebephilia is not a recognized diagnosis. The ICD-11 reduced from nine to five the number of specifically named sexual disorders but included OPD, the general category of paraphilic disorders. This category focuses on a person's interest in individuals "who are unwilling or unable to consent [to sexual activity] but that is not specifically described in any of the other named Paraphilic Disorders categories." Hebephilia is defined as a preferential sexual interest in pubescent (early stages of puberty) children, a group whose age renders them unwilling or unable to consent. Thus, a diagnosis of hebephilia would fit within the ICD-11's sexual disorder of OPD.

¶ 30 Ultimately, the issuance of the ICD-11 does not affect our analysis and our determination that the diagnosis of hebephilia is generally accepted in the psychiatric and psychological communities. As we have stated, "general acceptance" does not mean universal acceptance or

even acceptance by a majority of experts; it requires only that the underlying method used to generate an expert's opinion is reasonably relied upon by experts in the relevant field. *Simons*, 213 Ill. 2d at 530. The revisions to the ICD-11 do not negate the testimony of Thornton, Cantor, and Fabian at the *Frye* hearing that identified significant segments of the relevant scientific community that have accepted the diagnosis of hebephilia. Thus, we determine that the State proved that the diagnosis of hebephilia has achieved general acceptance in the relevant scientific community, and the trial court's judgment was not in error.

¶ 31 Respondent next contends that the trial court erred in finding him to be a sexually violent person. In reviewing a trial court's finding that a respondent is sexually violent, we ask only whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt. *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 598 (2007).

¶ 32 Pursuant to the Act, a person is a sexually violent person if he (1) has been convicted of a sexually violent offense, (2) suffers from a mental disorder, and (3) is dangerous because the mental disorder creates a substantial probability that he will engage in acts of sexual violence. 725 ILCS 207/5(f) (West 2018). Respondent concedes that he was convicted of a sexually violent offense but argues that the State failed to prove the remaining elements beyond a reasonable doubt.

¶ 33 At trial, the State presented the testimony of Stanislaus, the forensic psychiatrist and licensed sex-offender evaluator. Stanislaus testified that she performed a clinical evaluation of respondent but never met with him, as he did not wish to participate in an interview. She completed two reports, in 2014 and 2018, based on her review of various records.

¶ 34 Respondent had pleaded guilty to two counts of aggravated criminal sexual abuse, arising out of several incidents in 2003 involving three girls who were 13 to 14 years old at the time, while

respondent was approximately 20 years old. Respondent had sex several times with one 14-year-old victim while he was on bond for charges involving another victim. At around that same time, there were allegations that respondent was chatting online with another 14-year-old girl, persistently asking for sex. He also had sexual contact with a 16-year-old friend of one of his victims.

¶ 35  Respondent was paroled in August 2005.  He was ordered not to have any Internet access or possess electronic devices such as a cell phone. In November 2006, he was found to have violated his parole by sending sexually explicit messages to a 13-year-old girl after setting up a MySpace account, claiming to be a 16-year-old high school student. Respondent was 23 to 24 years old at the time. This led to his conviction of indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2006)) and a sentence of six years in prison. Around that time, the police discovered that respondent had gotten in touch with one of his prior victims, who was then approximately 15 years old, and was engaging in sex with her. Respondent did not participate in any sex-offender treatment while he was imprisoned but did receive some sex-offender treatment while on parole.

¶ 36 Using the DSM-5, Stanislaus diagnosed respondent with the mental disorder of Other Specified Paraphilic Disorder-Hebephilia. Stanislaus defined a paraphilia as any intense persistent sexual interest in anything other than with phenotypically normal, physically mature, consenting human partners. According to Stanislaus, it is not just a deviant sexual interest—the person must have acted on it and resulted in harm to another or significant distress to the person committing the behavior. Respondent had engaged in recurrent sexual behavior with 13 and 14- year-old female victims. This led to his imprisonment. This diagnosis did not require that

pubescent girls were his only attraction; respondent could be attracted to physically mature partners as well.

¶ 37 Stanislaus also stated that the mental disorder affected respondent's emotional or volitional capacity and predisposed him to engage in continued acts of sexual violence. Static-99 and Static-99R risk-assessment tests showed that respondent was above-high risk to reoffend, the second-highest risk category. Stanislaus opined that, to a reasonable degree of psychiatric certainty, it was substantially probable that respondent would reoffend. She then opined that respondent met the criteria to be found a sexually violent person.

¶ 38 Travis diagnosed respondent, pursuant to the DSM-5, as "Other Specified Paraphilic Disorder, sexually attracted to early pubescent females, Nonexclusive," also known as hebephilia. He described the criteria for this diagnosis as "over the period of at least six months having intense fantasies, urges or engaging in behaviors—sexual behaviors toward persons who are in the time period, we'll call pubescent, which is 11 to 14 generally." He also found it to be a mental disorder because respondent acted out on it, causing harm to other people. He cited respondent's lack of control, acting out with a 14-year-old when he was on bond, and attempting to "become sexual" with a 13-year-old while he was on parole.

¶ 39 Respondent presented the testimony of Fabian, who diagnosed respondent as suffering from "specific learning disorder," a disorder recognized by the DSM-V. Fabian did "not support" the possibility that this disorder would predispose respondent to acts of sexual violence. Fabian believed, with "some conjecture," that respondent's "lower functioning *** could be in part related to him gravitating towards younger, you know, let's say adolescents." Fabian opined that the prefrontal cortex of the brain does not fully develop until a person is 23 to 24 years old; respondent committed his offenses while in his late teens to 24 years old and suffered at that time from specific

learning disorder. Fabian could not say that respondent had a paraphilic disorder and agreed that respondent "does not in any respect suffer from a congenital or acquired condition affecting the emotional or volitional capacity that predisposes him to engage in acts of sexual violence." Respondent did "in part" have a history of being hypersexual, but that was not a diagnosis of a paraphilia, it was more related to a risk factor.

¶ 40 Fabian reiterated his opinion that respondent did not have a paraphilic disorder and that hebephilia "does not exist." Because respondent did not suffer from a relevant mental disorder, the issue of risk of sexual reoffense was irrelevant.

¶ 41 Fabian did state that, "technically based on DSM-5 criteria," respondent "would have qualified" for a diagnosis of pedophilia, but two of his victims were almost 14 and almost 16; thus Fabian saw a "pubescent/postpubescent interest," where respondent was at the "high-end cutoff of pedophilic disorder," and he could not say that he could not reasonably diagnose respondent as such.

¶ 42 We conclude that, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the elements proved beyond a reasonable doubt. See *Lieberman*, 379 Ill. App. 3d at 598. Respondent's conviction of a sexually violent offense was not at issue. Both Stanislaus and Travis testified that they diagnosed respondent with the mental disorder of "Other Specified Paraphilic Disorder-Hebephilia" pursuant to the DSM-5, a diagnosis amply supported by respondent's history of sexual offenses involving 13- and 14-year-old girls. Fabian, respondent's own expert, testified that respondent was on the cusp of a diagnosis of pedophilia. Respondent's commission of some of these offenses while on bond or on parole and his "above-high risk to reoffend" score pursuant to the Static-99 and Static-99R risk-assessment tests also support a finding that it was substantially probable that respondent will engage in future acts of

sexual violence. Thus, we conclude that there was no error in the trial court's finding that respondent is a sexually violent person under the Act.

¶ 43                           III. CONCLUSION

¶ 44    For these reasons, the judgment of the circuit court of Lee County is affirmed.

¶ 45    Affirmed.

---

**No. 2-18-0905**

---

| | |
|---|---|
| **Cite as:** | *In re Detention of Bauer*, 2020 IL App(2d) 180905 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lee County, No. 09-MR-64; the Hon. Daniel A. Fish, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Allison B. Fagerman, of Law Office of Allison B. Fagerman, P.C., of Rock Falls, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Nicholas Moeller, Assistant Attorneys General, of counsel), for the People. |

---