# Illinois Official Reports

## Appellate Court

*In re Detention of Hayes*, 2014 IL App (1st) 120364

| | |
|---|---|
| Appellate Court Caption | *In re* DETENTION OF LAWRENCE HAYES (The People of the State of Illinois, Petitioner-Appellee, v. Lawrence Hayes, Respondent-Appellant). |
| District & No. | First District, Third Division<br>Docket No. 1-12-0364 |
| Filed | April 9, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld the indefinite involuntary commitment order entered against respondent following a jury's finding that he was a sexually dangerous person under the Sexually Violent Persons Commitment Act, on the grounds that respondent was not prejudiced by a variation between the petition and the proof, no *Frye* hearing was necessary where the mental disorder he allegedly suffered was admissible as a generally accepted diagnosis in the psychiatric community, and an incomplete and deceptive special interrogatory respondent requested was properly rejected by the trial court. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-80014; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Stephen F. Potts and Miguel E. Larios, both of Law Offices of Stephen Potts, of Des Plaines, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael M. Glick and Stephen M. Soltanzadeh, Assistant Attorneys General, of counsel), for the People.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Cases involving the Sexually Violent Persons Commitment Act (SVP Act) (725 ILCS 207/1 *et seq.* (West 2012)) require the trial judge to particularly pay close attention to the expert evaluations of the respondent, which is precisely how the judge reached this decision. Unlike most matters, which turn on the past, the issue under SVP Act turns on what might happen in the future based on what is known today.

¶ 2    Respondent Lawrence Hayes appeals the trial court's indefinite involuntary commitment order entered after a jury found him a sexually violent person under the SVP Act. Hayes raises three distinct issues: (i) whether the State can seek commitment for mental diagnosis not pled in its petition; (ii) whether, under the *Frye* standard, the diagnosis of "paraphilia, not otherwise specified, nonconsent" (PNOS, nonconsent) is admissible; and (iii) whether Hayes's proposed special interrogatories should have been given to the jury.

¶ 3    We hold (i) no prejudice arose from variations between the petition and proof; (ii) the mental disorder at issue is admissible as a generally accepted diagnosis in the psychiatric community; and (iii) the trial court properly rejected the special interrogatories as incomplete and deceptive.

¶ 4                                              BACKGROUND

¶ 5    The trial consisted entirely of expert testimony. In setting out the facts, we note that none of the experts had personal knowledge of the events to which they testified.

¶ 6    Lawrence Hayes, who was born in 1961, committed minor crimes between ages of 9 and 11, such as shoplifting and stealing bicycles. In January 1980, Hayes, then 18, kidnapped a 13-year-old girl and raped her. In April of that year, he and two others kidnapped and raped a 16-year-old girl. Two weeks later, Hayes and another individual kidnapped a 20-year-old woman at gunpoint and raped her. Hayes pleaded guilty to each of these offenses and received a prison term of 12 years.

¶ 7    Soon after his release in November 1985, Hayes kidnapped a woman at knifepoint and raped her, which resulted in a 10-year sentence. In 1997, having been released from incarceration, Hayes kidnapped a woman in her mid-20s at knifepoint and gunpoint and raped her twice. When she tried to escape, he struck her twice in the face. In March 1998, Hayes picked up his brother-in-law's 14-year-old daughter from school and offered her $100 to perform a sexual act. She refused and told her parents. Hayes's sentence for the 1997 and 1998 crimes was for 20 years. Hayes also has convictions for criminal trespass to a vehicle and theft in 1980, and burglary and illegal possession of a weapon by a felon in 1994.

¶ 8    While incarcerated, Hayes twice refused sex-offender treatment. He also incurred 22 disciplinary reports, including 5 major violations of Illinois Department of Correction (IDOC) rules. None of the infractions were sexual in nature. Hayes spent a total of 25 days segregated from the general prison population.

¶ 9    In November 2007, the State sought Hayes's commitment as a sexually violent person, alleging he suffered from PNOS, nonconsent. Attached to the State's petition was a psychologist's evaluation which stated he suffered from (i) PNOS, nonconsent and (ii) personality disorder not otherwise specified with antisocial features. The Diagnostic and Statistical Manual of Mental Disorders, fourth edition, text revision (DSM-IV-TR) generally defines paraphilia as "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons that occur over a period of at least 6 months." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 566 (4th ed., text rev. 2000).

¶ 10   During his detention before trial, Hayes refused to participate in sex-offender treatment. Hayes told one evaluator that he did not believe he needed sex-offender treatment. At trial, the State presented two expert witnesses. Hayes did not produce any witnesses.

¶ 11                               Dr. Bellew-Smith's Testimony

¶ 12   Dr. Martha Bellew-Smith, a clinical psychologist, testified as an expert in the evaluation, diagnosis, and treatment of sex offenders, and in sex-offender risk assessment. She reviewed Hayes's master file and medical records at the Department of Human Services, and his court records, police reports, prerelease evaluation, and mental health records. Hayes refused her request for an interview.

¶ 13   Referencing the DSM-IV-TR, Bellew-Smith diagnosed Hayes with "paraphilia, not otherwise specified, sexually attracted to nonconsenting adolescents and adults, nonexclusive," and antisocial personality disorder. The DSM-IV-TR defines antisocial personality disorder as "a pervasive pattern of disregard for and violation of the rights of others occurring since age 15 years, as indicated by three (or more) of the following":

   "(1) failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest

   (2) deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure

   (3) impulsivity or failure to plan ahead

   (4) irritability and aggressiveness, as indicated by repeated physical fights or assaults

(5) reckless disregard for safety of self or others

(6) consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations

(7) lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another." *Id.* at 706.

¶ 14    While ordinary men are "turned off" by nonconsensual sexual contact, Bellew-Smith testified that this type of contact aroused Hayes, though he could be aroused in other ways. She based her opinion on Hayes's pattern of sexual assaults and that he had children so was capable of having a sexual relationship without rape. She further referred to Hayes's criminal record, and his disregard for the safety of others, as indicators of antisocial personality disorder.

¶ 15    Bellew-Smith testified that both PNOS, nonconsent and antisocial personality disorder were congenital or acquired. She also said that both mental disorders predisposed Hayes to commit acts of sexual violence. She refused to say whether Hayes's diagnosis of antisocial personality disorder alone was enough to designate him as a sexually violent person.

¶ 16    Bellew-Smith relied on two actuarial risk assessment tools to determine the likelihood Hayes would commit future sexual violence: the Static-99R and the MnSOST-R. The Static-99R studied recidivism in a group of about 6,000 sex offenders, mostly from Canada. The MnSOST-R did the same with a sample size of 400 to 500 sex offenders from Minnesota. Both tools grouped Hayes in the highest risk category. Others in the same category, according to the Static-99R, recidivated at a rate of 31.2% over 5 years, and 41.9% over 10 years. As to the MnSOST-R, the recidivism rate was 73%, though it does not specify a time frame.

¶ 17    Other factors Bellew-Smith considered relevant in predicting sexual recidivism were deviant sexual interests and the presence of antisocial personality disorder. She also considered Hayes's hostility and the violence involved in his crimes. As to Hayes's deviant sexual interests, she testified Hayes kidnapped and had nonconsensual sex with women. "Once that urge strikes, he doesn't seem to be able to get it stopped." She noted that people with antisocial personality disorder carry a much greater risk of reoffending.

¶ 18    Bellew-Smith identified protective factors that reduce the risk of committing future acts of sexual violence. Though, in Hayes's case, she noted that he refused to participate in a sex-offender treatment program and had no ailments that would prevent him from sexually reoffending. On the other hand, she said his age (over 40) indicated a reduced risk of recidivism.

¶ 19    Based on her review of the actuarial tools, and Hayes's file, Bellew-Smith testified that Hayes was much more likely than not to sexually reoffend.

¶ 20                              Dr. Gaskell's Testimony

¶ 21    Dr. Steven Gaskell, a forensic psychologist, testified on behalf of the State as an expert in clinical and forensic psychology and in the evaluation of risk analysis for sex offenders. Gaskell examined Hayes's master file and the grand jury testimony from Hayes's cases. Hayes refused Gaskell's request to be interviewed. Gaskell diagnosed Hayes with paraphilia, not otherwise specified, sexually attracted to nonconsenting adolescent and adult females, nonexclusive type, and antisocial personality disorder. The addendum "nonexclusive type" means that Hayes is not exclusively attracted to nonconsenting persons–Hayes was married

from 1991 to 1998. Gaskell admitted that there is a controversy as to whether paraphilic coercive disorder is a valid diagnosis and whether it should be in the DSM.

¶ 22    Gaskell opined that both diagnoses–alone or together–were sufficient to qualify Hayes as a sexually violent person under the SVP Act. Gaskell also stated that both disorders were acquired or congenital, and affected Hayes's volitional capacity in that he has deviant sexual desires on which he cannot stop himself from acting. These disorders do not resolve themselves without treatment.

¶ 23    Referring to the Static-99R and MnSOST-R, Gaskell testified that Hayes presented a high risk for sexual recidivism. According to the Static-99R, the likelihood that the average sex offender with Hayes's score would commit sexual violence within 5 years was 31.2%, and within 10 years was 41.9%. The MnSOST-R estimated that a sex offender with Hayes's score had a 72% chance of being re-arrested within six years. These instruments underestimate the likelihood sexually reoffending, according to Gaskell, because they only count sex offenders who were later arrested and convicted. Moreover, only 5% to 10% of those in the sample group scored higher than Hayes. Gaskell admitted that the actuarial measures can be inaccurate, but how inaccurate was difficult to quantify. He said these instruments are based on sex offenders generally, and not limited to sex offenders with mental disorders.

¶ 24    Gaskell considered additional risk factors such as Hayes's antisocial personality disorder, deviant sexual interest, and hostility and weighed factors that could potentially lower Hayes's risk of reoffending including age, health status, and progress in sex-offender treatment. Citing a 2006 study, Gaskell testified that Hayes's criminal convictions indicated that his age did not decrease his risk of committing future sexual violence. Moreover, Hayes did not have any health conditions that affected his ability or desire to commit sexual offenses and had not completed sex-offender treatment. Accordingly, Gaskell concluded that these factors would not decrease the risk of Hayes sexually reoffending. Gaskell further testified to a substantial probability of Hayes committing future acts of sexual violence and that he met the definition of a sexually violent person under the SVP Act.

¶ 25                                  ANALYSIS
¶ 26                        Diagnosis Outside the Pleadings
¶ 27    Hayes asserts that the State should not have been allowed to seek a commitment based on the antisocial personality disorder diagnosis because it was not alleged in the State's petition. The State responds that the issue is forfeited. Hayes did not preserve the issue by failing to raise it in his posttrial motion. *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 65. Even if he had preserved the issue, Hayes has failed to show any prejudice arising from it.

¶ 28    A petition under the SVP Act must allege, among other things, that the respondent "has a mental disorder" and "is dangerous to others because [his or her] mental disorder creates a substantial probability that he or she will engage in acts of sexual violence." 725 ILCS 207/15(b)(4), (5) (West 2010). A "mental disorder" is "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2010). Phrased in another way, among the elements the State must plead are the respondent's mental disorder, the effect of the mental disorder on his or her volitional or emotional capacity, and the substantial probability the mental disorder will prompt the respondent to commit future acts of sexual violence.

¶ 29      "Generally, in civil litigation, variance between the pleadings and the proof will not be deemed material unless it misleads the adverse party to his [or her] prejudice." (Internal quotation marks omitted.) *In re Detention of New*, 2013 IL App (1st) 111556, ¶ 66. The State's petition alleged Hayes suffers from a single mental disorder: PNOS, nonconsent. At trial, both experts testified that Hayes suffered from antisocial personality disorder in addition to PNOS, nonconsent. In its closing argument, the State urged that both mental disorders together increased the probability that Hayes would commit sexual violence in the future.

¶ 30      We agree with Hayes that the State's reliance on the diagnosis of antisocial personality disorder constituted a variance between the pleadings and the proof. But Hayes fails to show prejudice arising from the variance. Hayes asserts any variation between the pleadings and proof constitutes reversible error. This is incorrect. While the black letter law states that proof without pleading is as defective as a pleading without proof, the objecting party must show the prejudicial effect of the variance. *Id.* ¶ 69. Prejudice often takes the form of surprise. *Id*. None appears here. The psychological evaluation attached to the State's petition lists a form of antisocial personality disorder as one of the diagnoses. Moreover, Hayes does not assert that he was unable to question the State's experts at their depositions regarding the personality disorder diagnosis, and at trial he thoroughly cross-examined the experts regarding their diagnosis. See *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 52 (allowing variance where respondent failed to show prejudice). Thus, we find no prejudice resulting from the variance.

¶ 31                               PNOS, Nonconsent & *Frye*

¶ 32      Next, Hayes contends that the State should not have been allowed to present evidence that he suffered from PNOS, nonconsent, as the diagnosis is not admissible under the *Frye* standard. Our standard of review of the denial of a motion *in limine* based on a *Frye* issue is *de novo*. *In re Commitment of Simons*, 213 Ill. 2d 523, 531 (2004).

¶ 33      The standard set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), with regard to the admissibility of expert testimony was recently codified in the Illinois Rules of Evidence: "Where an expert witness testifies to an opinion based on a new or novel scientific methodology or principle, the proponent of the opinion has the burden of showing the methodology or scientific principle on which the opinion is based is sufficiently established to have gained general acceptance in the particular field in which it belongs." Ill. R. Evid. 702 (eff. Jan. 1, 2011).

¶ 34      The State claims that *Frye* is not applicable to the diagnosis because it is not a scientific methodology. We have rejected this argument twice already. *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 56; *In re Detention of New*, 2013 IL App (1st) 111556, ¶ 47.

         "We noted that 'a prerequisite for a diagnosis is scientific evidence that such a mental condition exists' and that '[a] *Frye* hearing is appropriate to determine whether an emerging diagnosis is an actual illness or disorder.' [Citation.] We also noted that '[i]f we were to accept the State's arguments, litigants could proffer fictional conditions' and that '[t]he purpose of a *Frye* hearing is to safeguard the court's truth-finding role [citation], ensuring that the fact finder cannot make findings based on unsound science.' [Citation.] The reasoning *** holds true. We again *** reject the State's claim that *Frye* does not apply to diagnoses." *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 56.

¶ 35    This court has also previously rejected Hayes's argument that PNOS, nonconsent is not generally accepted as a valid diagnosis. "A court may determine the general acceptance of a scientific principle or methodology in either of two ways: (1) based on the results of a *Frye* hearing; or (2) by taking judicial notice of unequivocal and undisputed prior judicial decisions or technical writings on the subject." *People v. McKown*, 226 Ill. 2d 245, 254 (2007). This court recently held that it was appropriate to take judicial notice that PNOS, nonconsent is generally accepted within the psychological community. *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 58. While the "not otherwise specified" (NOS) category in the DSM-IV-TR is a residual category, that alone does not mean an NOS diagnosis is not generally accepted. While some controversy surrounds the use of the PNOS, nonconsent diagnosis, it is " 'not so unsupported by science that it should be excluded absolutely from consideration by the trier of fact.' " *Id.* ¶ 61 (quoting *McGee v. Bartow*, 593 F.3d 556, 580 (7th Cir. 2010)); *In re Detention of Lieberman*, 2011 IL App (1st) 090796, ¶ 53 ("the diagnosis of paraphilia NOS, nonconsent has been the basis for numerous probable cause or sexually violent person findings in this state and other jurisdictions outside of this state"); see *In re Detention of Hardin*, 238 Ill. 2d 33, 49-50 (2010) (holding that PNOS, nonconsent diagnosis satisfied mental disorder element at probable cause hearing under SVP Act).

¶ 36    Accordingly, a *Frye* hearing was unnecessary.

¶ 37                                  Special Interrogatories

¶ 38    Hayes argues that the trial court erred in refusing to give his special interrogatories to the jury. We review this issue *de novo*. 735 ILCS 5/2-1108 (West 2010). The trial court refused the special interrogatories on the grounds that they were confusing, ambiguous, and misleading.

¶ 39    Under the Code of Civil Procedure, parties may submit special interrogatories to the jury:

> "The jury may be required by the court, and must be required on request of any party, to find specially *upon any material question or questions of fact* submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions." (Emphasis added.) 735 ILCS 5/2-1108 (West 2010).

"The function of a special interrogatory is to require the jury's determination as to one or more specific issues of ultimate fact and is a check upon the deliberations of the jury. [Citation.] Generally, an inconsistent special finding controls a general verdict as a matter of common law ***." *Zois v. Piniarski*, 107 Ill. App. 3d 651, 652 (1982).

¶ 40    "A special interrogatory is in proper form if (1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned." *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002). "A trial court must give a special interrogatory if it involves an ultimate question of fact and if it is in proper form." *Babcock v. Chesapeake & Ohio Ry. Co.*, 83 Ill. App. 3d 919, 926 (1979). "[T]he interrogatory should contain a single direct question and should not be repetitious, misleading, confusing or ambiguous and should use the same language or terms as are contained in the instructions." *Zois v. Piniarski*, 107 Ill. App. 3d at 652. Special interrogatories should "be considered together and in light of other instructions of the court." *Mudd v. Goldblatt Bros., Inc.*, 118 Ill. App. 3d 431, 438 (1983).

¶ 41 Hayes proposed three special interrogatories, though, in his posttrial motion, Hayes only objected to the refusal of the second one. Accordingly, we find he forfeited his claims regarding the first and third interrogatories. *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 65 (holding issues not raised in post trial motion forfeited on appeal).

¶ 42 The second interrogatory reads:

> "We, the jury, unanimously find, beyond a reasonable doubt, that the Respondent, Lawrence Hayes, suffers from the mental disorder Paraphilia Not Otherwise Specified Non-consent."

The trial court rejected this interrogatory because it is incomplete. It lists a single mental disorder: PNOS, nonconsent. But, the State presented evidence of two mental disorders, and Gaskell testified that either mental disorder would satisfy the requirements of the SVP Act. Nothing in the record contradicts this opinion. Giving the second special interrogatory would paint an improper picture for the jury; the trial court correctly refused it.

¶ 43                                    CONCLUSION

¶ 44 The jury found that Hayes suffers from mental disorders that affect his volitional capacity and can render him dangerous to the community. Having either rejected defendant's claims of error or found that any error was not prejudicial, we affirm.

¶ 45 Affirmed.