2015 IL App (1st) 142424
No. 1-14-2424
Opinion filed August 26, 2015

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* DETENTION OF LAWRENCE HAYES | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 07-CR-80014 |
| | ) | |
| v. | ) | |
| | ) | The Honorable |
| LAWRENCE HAYES, | ) | Thomas Byrne, |
| | ) | Judge, presiding. |
| Respondent-Appellant). | ) | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1      In November 2011, a jury determined respondent, Lawrence Hayes, to be a sexually violent person under the Sexually Violent Persons Commitment Act (SVP Act) (725 ILCS 207/1 *et seq.* (West 2006)). The trial court committed Hayes to the custody of the Illinois Department of Human Services (DHS) for institutional care in a secure facility. On direct appeal, we affirmed Hayes's commitment, finding that paraphilia not otherwise specified, attracted to nonconsenting adolescents and adults (PNOS Nonconsent) was generally accepted as a valid diagnosis. See *In re Detention of Hayes*, 2014 IL App (1st) 120364 (*Hayes I*).

¶ 2        In May 2013, as required by statute (725 ILCS 207/55 (West 2012)), a forensic psychologist reevaluated Hayes and submitted a report, which he updated in July 2013. Based on the reevaluation, the State moved to find no probable cause to hold an evidentiary hearing on Hayes's status as a sexually violent person. The trial court agreed with the State. Hayes asks us to reverse and remand for a full evidentiary hearing because of a purported change in the latest edition of the disorder's criteria published in American Psychiatric Association, Diagnostic and Statistical Manual, 5th Edition, DSM-5 (2013) (DSM-5). Hayes was committed as a Sexually Violent Person (SVP) under American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision, DSM-IV-TR (2000) (DSM-IV-TR), based on his PNOS Nonconsent diagnosis.

¶ 3        We affirm the trial court's decision that no probable cause existed to warrant an evidentiary hearing on whether Hayes was still a SVP. We conclude that Hayes' underlying condition and diagnosis remained unchanged under the DSM-5 criteria.

¶ 4                            Background

¶ 5        In *Hayes I*, we described Hayes' underlying offenses. In summary, between 1980 and 1998, Hayes accumulated convictions on multiple sex offenses for which he was sentenced to prison. In 2000, after pleading guilty to aggravated criminal sexual assault and child pornography, he received concurrent prison terms of 20 years and 6 years, respectively. In November 2007, the State sought Hayes' commitment as a sexually violent person, alleging he suffered from PNOS Nonconsent. The State's petition included evaluations from two psychologists; Dr. Steven Gaskell, a forensic psychologist, and Dr. Martha Bellew-Smith, a clinical psychologist. Both doctors diagnosed Hayes with PNOS Nonconsent as defined in the DSM-IV-TR. Hayes also was diagnosed with a "personality disorder not otherwise specified

with antisocial features." The jury determined Hayes to be a sexually violent person and the trial court committed Hayes to the DHS for institutional care and treatment in a secure facility until further court order. As provided by the SVP Act, the trial court's order required an initial periodic reexamination within six months. See *Hayes 1*, 2014 IL App (1st) 120364, ¶ 9.

¶ 6        Section 55 of the SVP Act dictates that the DHS "submit a written report to the court on his or her mental condition at least once every 12 months after an initial commitment *** for the purpose of determining whether: (1) the person has made sufficient progress in treatment to be conditionally released and (2) the person's condition has so changed since the most recent periodic reexamination (or initial commitment, if there has not yet been a periodic reexamination) that he or she is no longer a sexually violent person." 725 ILCS 207/55 (West 2012). On May 15, 2012, Dr. Gaskell filed a reevaluation report indicating that Hayes declined evaluation. Based on a review of Hayes' records, Gaskell again opined that Hayes met the DSM-IV-TR diagnostic criteria for PNOS Nonconsent. The report noted that this diagnosis "is used for coding Paraphilias that do not meet the criteria for any of the specific paraphilias." Based on this diagnosis and a risk of reoffending analysis, Dr. Gaskell recommended Hayes remain committed to DHS for further secure care and treatment.

¶ 7        In May 2013, Dr. Gaskell submitted a re-evaluation in further compliance with section 55. This time, Hayes consented to be evaluated. Gaskell again diagnosed Hayes as suffering from the mental disorder PNOS Nonconsent as defined in the DSM-IV-TR. On May 15, 2013, the State filed a "Motion for Finding of No Probable Cause Based on Annual Re-examination Report," requesting that the trial court enter an order finding that no probable cause existed to believe that respondent was no longer a sexually violent person, which would have precluded a further evidentiary hearing on that issue. After the release of DSM-5 in May 2013, Dr. Gaskell

submitted an updated reevaluation on July 2. The updated report stated that Hayes met the DSM-5 criteria for "Other Specified Paraphilic Disorder Sexually Attracted to Nonconsenting Adolescent and Adult Females. Nonexclusive Type [OSPD] (formally) [*sic*] [PNOS Nonconsent] in the DSM-IV-TR)." Regarding future risk analysis, Dr. Gaskell indicated Hayes fell in the "High" risk category on one test and in the "Moderate-High" risk category on another test. Hayes "also had additional risk factors which were not measured by the actuarial instruments which suggested he [was] substantially probable to engage in acts of sexual violence in the future."

¶ 8        Referring to the new designation of OSPD, the report noted: "[a]lthough there are no changes to the diagnostic criteria for Mr. Hayes' mental disorders, one of his mental disorders has changed in name only. His diagnosis of [PNOS Nonconsent] is now [OSPD]." Again, in the report: "[OSPD] is a mental disorder as defined by the Act. This disorder was [formerly] called [PNOS Nonconsent]. There was no change in the diagnostic criteria for this disorder from the DSM-IV-TR to the DSM-5."

¶ 9        Gaskell's "Sources of Information" included: a 75-minute clinical interview with Hayes in April 2012; Hayes's criminal history information, investigative reports, and other court records; the DHS "Master Treatment Plan[s]" dated December 2012 and April 2013; the DHS "Progress Notes" from July 2012 through February 2013; the Illinois Department of Corrections (DOC) disciplinary and mental health records; the DOC "Sex Offender Pre-Release Evaluation" dated September 2007; the "[SVP Act] Evaluation" by Dr. Ray Quackenbush in November 2007; the "[SVP Act] Examination" by Gaskell in December 2007; and, in May 2012, two risk assessment tests, the Static 99R and the Static 2002R. Gaskell's report also stated that OSPD "is used for coding paraphilias that do not meet the criteria for any of the specific paraphilic disorders."

¶ 10    Hayes did not file a petition for discharge or for conditional release. On August 28, 2013, Hayes responded to the State's petition by pointing out that he had never been diagnosed with OSPD as opined in the updated psychological reexamination and "this mental disorder did not form the basis" for his commitment. Hayes further asserted that the DSM-5 did not recognize the PNOS Nonconsent diagnosis, citing *Kansas v. Hendricks*, 521 U.S. 346, 372-73 (1997), for the proposition that his "mental abnormality is too imprecise a category to offer a solid basis for concluding that civil detention is justified."

¶ 11    In its reply, the State insisted that: (1) Gaskell's diagnostic reasoning had not changed; (2) only the diagnostic name changed from PNOS Nonconsent to OSPD; and (3) no substantive distinction exists between the two.

¶ 12    One year later, on July 2, 2014, during arguments on whether probable cause existed for a full evidentiary hearing, Hayes argued that the DSM-5 incorporated a substantive change in the professional knowledge and methods used to evaluate a person's mental disorder or risk of reoffending. The trial court agreed with the State, ruling that Hayes failed to establish the requisite probable cause to proceed to a full evidentiary hearing.

¶ 13                                             ANALYSIS

¶ 14                                         Standard of Review

¶ 15    Courts in Illinois have disagreed regarding the standard of review for a probable cause hearing. This court has stated that we review the ultimate question of whether respondent established probable cause *de novo*. *In re Detention of Lieberman*, 2011 IL App (1st) 090796, ¶ 40, *aff'd*, *In re Detention of Stanbridge*, 2012 IL 112337. Further, where the evidence before a trial court consists of depositions, transcripts, or evidence otherwise documentary in nature, we may review the record *de novo*. *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009).

Meanwhile, the Fifth and Fourth Districts review trial courts' probable cause decisions for an abuse of discretion. See *In re Detention of Cain*, 341 Ill. App. 3d 480, 482 (2003); *In re Ottinger*, 333 Ill. App. 3d 114, 120 (2002). While we believe the appropriate standard is that employed in *Lieberman*, under either standard our result would be the same.

¶ 16                            Sexually Violent Persons Commitment Act

¶ 17        The SVP Act mandates the procedures for the State to petition to commit a person who previously has been convicted of a sexually violent offense. 725 ILCS 207/15 (West 2012). After trial and initial commitment as an SVP, section 55 of the SVP Act requires periodic re-examinations to determine whether the respondent has made sufficient progress to be conditionally released or discharged. *In re Detention of Samuelson*, 189 Ill. 2d 548, 555 (2000); 725 ILCS 207/55 (West 2012). This ensures that a respondent remains confined only so long as he or she continues to satisfy the SVP Act commitment criteria. Under section 65(b)(1) of the SVP Act, following each reexamination, the respondent receives written notice of the right to petition for discharge. 725 ILCS 207/65(b)(1) (West 2012). Under section 65(b)(1), the respondent has three options following periodic reexamination: (1) petition for discharge and receive a full probable cause hearing; (2) waive the right to a hearing, essentially assenting to further commitment; or (3) do nothing. *Id*.; *People v. Botruff*, 212 Ill. 2d 166, 178-79 (2004). Should the respondent do nothing, the court must hold a probable cause hearing consisting only of a review of the reexamination reports and arguments of the parties so as to determine whether facts exist that warrant a hearing on respondent's current status as a sexually violent person. *Id*. at 179; 725 ILCS 207/65(b)(1) (West 2012). As noted in *Botruff*, this paper review " 'weed[s] out frivolous petitions.' " (Internal quotation marks omitted.) *Botruff*, 212 Ill. 2d at 181 (citing 725 ILCS 207/65(b)(1) (West 2000)). Thus, under section 65(b)(1), we base our decision regarding

probable cause to hold a full evidentiary hearing on the "paper review" and arguments of counsel.

¶ 18        A probable cause determination requires a "relatively low" quantum of evidence as support. *In re Detention of Hardin*, 238 Ill. 2d 33, 52 (2010). All that is required is a *plausible account* on each of the required elements. *Id.* (quoting *State v. Watson*, 595 N.W.2d 403, 420 (Wis. 1999)). The Illinois Supreme Court held in *Stanbridge,* 2012 IL 112337, that "the legislature intended that to present a plausible account, the committed individual bears the burden to present sufficient evidence that demonstrates a change in the circumstances that led to the initial commitment." *Id.* ¶ 87. Such change in circumstances could include:

> "a change in the committed person, a change in the professional knowledge and methods used to evaluate a person's mental disorder or risk of reoffending, or even a change in the legal definitions of a mental disorder or a sexually violent person, such that a trier of fact could conclude that the person no longer meets the requisite elements."

*Id.* ¶ 72.

¶ 19                    Diagnostic and Statistical Manual, 4th and 5th Editions

¶ 20        The DSM is a treatise created in 1952 by the American Psychiatric Association to classify mental disorders. It has become the standard reference used by psychiatrists and psychologists throughout the United States in both clinical and forensic settings. The DSM has been revised and refined in a number of editions. After 14 years of debate, the DSM-5 replaced the DSM-IV-TR in 2013. The DSM-5 includes eight specific paraphilic disorders, but states that these "do not exhaust the list of possible paraphilic disorders" and that "[m]any dozens of distinct paraphilias have been identified and named, and almost any of them could, by virtue of its negative consequences for the individual or for others, rise to the level of a paraphilic

disorder." DSM-5 at 685. The DSM-5 further states that "[t]he diagnoses of the other specified and unspecified paraphilic disorders are therefore indispensable and will be required in many cases." *Id.*

¶ 21    Comparing the two diagnoses, in the DSM-IV-TR, the criteria for paraphilia NOS are:

"recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons that occur over a period of at least 6 months ***. *** [T]he behavior, sexual urges, or fantasies cause clinically significant distress or impairment in social, occupational, or other important areas of functioning ***." DSM-IV-TR, at 566.

¶ 22    The DSM-5 refined PNOS from DSM-IV-TR with two new diagnostic options: "other specified paraphilia" and "unspecified paraphilia." The American Psychiatric Association discussed the new edition's changes in the article "Highlights of Changes from DSM-IV-TR to DSM-5." American Psychiatric Association, *Highlights of Changes From DSM-IV-TR to DSM-5*, (2013), http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf. Under the heading "Change to the Diagnostic Names," the article explains the differences between paraphilias and paraphilic disorders as described in DSM-5:

"In DSM-5, paraphilias are not ipso facto mental disorders. There is a distinction between paraphilias and paraphilic disorders. A paraphilic disorder is a paraphilia that is currently causing distress or impairment to the individual or a paraphilia whose satisfaction has entailed personal harm, or risk of harm, to others. A paraphilia is a necessary but not a sufficient condition for having a paraphilic disorder, and a paraphilia by itself does not automatically justify or require clinical intervention.

The distinction between paraphilias and paraphilic disorders was implemented *without making any changes to the basic structure of the diagnostic criteria as they had existed since DSM-III-R*. In the diagnostic criteria set for each of the listed paraphilic disorders, Criterion A specifies the qualitative nature of the paraphilia (e.g., an erotic focus on children or on exposing the genitals to strangers), and Criterion B specifies the negative consequences of the paraphilia (distress, impairment, or harmor risk of harmto others)." (Emphasis added.) *Id*. at 18.

¶ 23     The change from paraphilia NOS to other specified paraphilic disorder does not suggest a change in professional knowledge, but rather a relabeling or clarification of the elements of essentially the same disorder.

¶ 24                    Probable Cause for Evidentiary Hearing

¶ 25     When Hayes was initially committed as an SVP in 2007 and since then, PNOS Nonconsent has been held to be an appropriate diagnosis in this state and elsewhere. *Hayes I,* 2014 IL App (1st) 120364, ¶ 35 (quotin*g People v. McKown*, 226 Ill. 2d 245, 254 (2007)). See also *Hardin*, 238 Ill.2d at 49-50; *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 58; *Lieberman*, 2011 IL App (1st) 090796, ¶ 53; *State v. Harris*, 12 N.Y.S.3d 762 (N.Y. App. Div. 2015); *Brown v. Watters*, 599 F.3d 602, 610 (7th Cir. 2010) (rejecting challenge to paraphilia NOS diagnosis as lacking scientific validity); *McGee v. Bartow*, 593 F.3d 556 (7th Cir. 2010) (paraphilia NOS generally accepted as reliable diagnosis); *In re Detention of Hanson*, No. 70139-8-I, 2015 WL 540862, at *8 (Wash. Ct. App. Feb. 9, 2015) (denial of *Frye* hearing regarding paraphilia NOS diagnosis not improper (citing *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)); *In re Detention of Berry*, 248 P.3d 592 (Wash. Ct. App. 2011) (*Frye* hearing not required to determine validity of paraphilia NOS diagnosis because no evidence to establish

no longer generally accepted); *Hoisington v. Williams*, No. CV-07-332-LRS, 2008 WL 4831699 (E.D. Wash. Oct. 30, 2008) (despite controversy, paraphilia NOS generally accepted in scientific community); *People v. Williams*, 74 P.3d 779 (Cal. 2003) (paraphilia NOS valid mental disorder).

¶ 26       Hayes cannot relitigate the fact that in 2007 two psychologists diagnosed him with PNOS Nonconsent and a jury found that he was a SVP. The issue before us is the basis for Hayes's commitment and whether the professional methods and knowledge relating to it or the legal definition of underlying disorder have changed.

¶ 27       After Hayes' re-examination in May 2013, he did nothing; he neither waived his right to a hearing nor did he petition for discharge. See *Botruff*, 212 Ill. 2d at 178-79. Instead, on August 28, 2013, Hayes responded to the State's petition, asserting that his diagnosis had changed from PNOS Nonconsent, as defined in the DSM-IV-TR, to OSPD, as defined in the DSM-5, and, therefore, he remained committed as an SVP under a diagnosis that no longer exists. Thus, under section 65(b)(1), the decision regarding probable cause to hold an evidentiary hearing is based on the "paper review" and arguments of counsel. 725 ILCS 207/65(b)(1) (West 2012).

¶ 28       In July 2014, at the hearing on probable cause, his attorney argued that the DSM-5 effected a change in the professional knowledge and methods used to evaluate his mental disorder and that Hayes had a different mental disorder with different criteria. He further argued that, therefore, this substantive change in his diagnosis required a hearing with live testimony regarding the new diagnosis. The State responded that the DSM is a guide with different interpretations for practitioners and that Hayes was still a sexually violent person. While the State's response did not address the issue directly and was conclusory, the undeniable reality was that Hayes' diagnosis supported the conclusion that he remained a SVP.

¶ 29    Hayes now argues the DSM-5 brought about the demise of PNOS Nonconsent, entitling him to an evidentiary hearing under section 65 of the SVP Act. Dr. Gaskell's May 2013 reevaluation and July 2013 updated reevaluation established that Hayes' underlying condition had not changed. Arguably there was a change in the medical definition of the mental disorder. The APA's article explaining the distinction between paraphilia and a paraphilic disorder contradicts the argument that the DSM-5 created a new disorder, abandoning the old definition. The article states specifically that the distinction between paraphilias and paraphilic disorders was implemented "without making any changes to the basic structure of the diagnostic criteria" that have existed since the publication of the DSM-III in 1980. American Psychiatric Association, *Highlights of Changes From DSM-IV-TR to DSM-5*, at 18, (2013), http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf.

¶ 30    We recognize that the unspecified paraphilic disorder has been criticized by experts in the field of psychiatry, but the mere fact that the diagnosis has been the subject of debate does not warrant the conclusion that it is no longer generally accepted. The American Psychiatric Association, the organization responsible for approving the revisions to DSM-IV-TR as DSM-5, implemented the new distinction between paraphilias and paraphilic disorders without making any changes to the basic structure of the diagnostic criteria, as we have explained. Dr. Gaskell unequivocally stated in his reevaluation that Hayes' underlying condition remained the same and his diagnosis did not change under the DSM-5 criteria. Accordingly, there was neither a change in the professional knowledge and methods used to evaluate his mental disorder nor in respondent's condition such that a trier of fact "could conclude that the person no longer meets the requisite elements" of being a sexually violent person. *Stanbridge*, 2012 IL 112337, ¶ 72. See also *In re Commitment of Tittelbach*, 2015 IL App (2d) 140392, ¶ 28 (rejecting respondent's

contention that revisions in DSM-5 meant he no longer had mental disorder and noting respondent had not changed "in any significant respect" since initial judgment).

¶ 31    In his reply brief, Hayes asserts that "behaviors alone can no longer form the basis for a paraphilic rape diagnosis as it once could in the DSM-IV." This argument overlooks the change in the DSM-5 establishing that only individuals who meet *both* Criterion A and Criterion B would now be diagnosed as having a paraphilic disorder. A diagnosis would not be given to individuals whose symptoms meet Criterion A but not Criterion B—that is, to those individuals who have a paraphilia but not a paraphilic disorder. American Psychiatric Association, *Highlights of Changes From DSM-IV-TR to DSM-5* at 18, (2013), http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf. Actually, the article shows the DSM-5 provided an even stronger basis for a commitment determination, by establishing more stringent requirements for a diagnosis of OSPD than did the DSM-IV-TR for PNOS Nonconsent. The DSM-5 requires both the behavior and the "negative consequence" of that behavior. Dr. Gaskell's July 2012 report reflected the new terminology and criteria for the same disorder. Thus**, t**he article serves to fortify Gaskell's updated report.

¶ 32                                        CONCLUSION

¶ 33    Hayes has failed to establish a plausible account that there has been a change in either the scientific knowledge and methods used to evaluate a person's mental disorder or the legal definition of his disorder so as to necessitate an evidentiary hearing. Accordingly, we uphold the trial court's decision to find no probable cause to warrant an evidentiary hearing.

¶ 34    We affirm the judgment of the trial court.

¶ 35    Affirmed.