2022 IL App (1st) 201107-U

FOURTH DIVISION
June 30, 2022

Nos. 1-20-1107 & 1-21-0753 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* COMMITMENT OF JOHNNY BUTLER | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 08 CR 80007 |
| v. | ) | |
| | ) | |
| Johnny Butler, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Respondent-Appellant). | ) | Judge Presiding. |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the judgment of the circuit court of Cook County denying respondent's motions to appoint an expert pursuant to the Sexually Violent Persons Commitment Act and finding no probable cause to believe that respondent is no longer a sexually violent person.

¶ 2    Respondent Johnny Butler has been committed to institutional care as a sexually violent person (SVP) pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2020)) since 2008.  He is currently 68 years old.  In these consolidated appeals, respondent challenges orders entered by the circuit court of Cook County in 2020 and 2021

(a) denying his motion to appoint psychologist Dr. Brian Abbott as his expert and (b) finding no probable cause to believe that respondent is no longer an SVP. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4                        *Petition for SVP Commitment and Trial*

¶ 5      Shortly before respondent's scheduled release from prison in 2008, the State filed a petition for commitment under the Act. According to the petition, respondent was convicted of attempted rape in 1976 and sentenced to a prison term of 5 to 15 years. In 1981, he was sentenced to a prison term of 22 years following his convictions for rape and deviate sexual assault. Respondent was convicted of attempted criminal sexual assault and aggravated kidnapping in 1998 and sentenced to another 22-year term of imprisonment.

¶ 6      The petition stated that clinical psychologist Dr. Ray Quackenbush had evaluated respondent in May 2008 and diagnosed him with (a) paraphilia not otherwise specified, non-consenting persons and (b) personality disorder not otherwise specified, with antisocial features. The State alleged that respondent was dangerous to others as he suffered from mental disorders that made it substantially probable that he would engage in acts of sexual violence. The State requested that the circuit court find respondent to be an SVP and commit him to the Illinois Department of Human Services (DHS) for control, care, and treatment pursuant to section 40 of the Act (725 ILCS 207/40 (West 2008)). In July 2008, Dr. Quackenbush testified at a probable cause hearing; the circuit court made a finding of probable cause following the hearing.

¶ 7      During a jury trial in 2011, the State called Dr. David Suire, a DHS psychologist. After reviewing documentation regarding respondent, *e.g.,* police, prison, and treatment records, Dr. Suire conducted a clinical interview and a supplemental examination with respondent.

¶ 8    Dr. Suire testified regarding respondent's sex-related offenses which resulted in prison sentences.  At age 22, respondent grabbed a woman on the University of Illinois Chicago (UIC) campus, cursed at her, threatened to rape her if she did not give him her money, and struck her in the head and the face.  At some point, respondent ran away; the victim subsequently identified him as her attacker.  At age 27, respondent grabbed another woman on the UIC campus and forced her into a restroom with a knife.[1]  After repeatedly raping her and forcing her to perform oral sex, he rifled through her purse.  Respondent then told the victim "one more for the road" and vaginally raped her two more times.  At age 45, he forced a woman from the street into a stairwell, removed her pants, and struck her in the head with a brick; respondent fled when an unidentified individual approached them.

¶ 9    Dr. Suire also testified regarding other violent and nonviolent offenses committed by respondent.  Respondent reported that he commenced "gangbanging" at the age of 7 or 8.  By the time he was 17 years old, he had been arrested for armed robbery.  Dr. Suire characterized respondent as "kind of a career criminal" and noted that respondent had "spent most of his life committing criminal acts or serving time for criminal acts."  During his terms of incarceration, respondent had both major and minor violations, including his possession of medication which did not belong to him.  Respondent also had been involved in several fights in the DHS facility, which Dr. Suire opined was "a little atypical," particularly given his age.

¶ 10    Dr. Suire testified that respondent significantly minimized the severity of his actions, *e.g.*, claiming the victim was not hurt or that their sexual activity was consensual.  Dr. Suire diagnosed respondent with four mental disorders which affected his emotional or volitional

---

[1] Dr. Suire testified that respondent had attempted to push another woman into a restroom at UIC eight days earlier.

capacity, predisposing him to commit future acts of sexual violence: paraphilia not otherwise specified – sexually attracted to non-consenting females; alcohol dependence; cocaine dependence; and antisocial personality disorder. Dr. Suire also employed multiple actuarial tools used to assess sex crime recidivism, each of which categorized respondent as high risk. According to Dr. Suire, respondent had certain additional risk factors, including hostility, deviant sexual arousal, and an "attitude of tolerance of sexual crimes."

¶ 11    As to protective factors that might lower the risk of reoffending, Dr. Suire examined respondent's treatment progress, his age, and his medical condition. Although respondent had engaged in some sex offender treatment during his terms of incarceration, Dr. Suire noted that he continued to offend after such treatment. Dr. Suire also testified that age generally is a protective factor, *i.e.*, the older an individual is, the less likely he is to commit another sex offense. According to Dr. Suire, the actuarial tools he had employed adequately accounted for respondent's age. While an offender's medical condition, *e.g.*, paralysis, could impair his ability to reoffend, Dr. Suire testified that respondent was in good health and had committed a sexual offense at age 45. Dr. Suire ultimately opined that respondent satisfied the criteria to be an SVP.

¶ 12    The State next called Dr. Jessica Ransom, a clinical psychologist who performed comprehensive evaluations under the Act for the Illinois Department of Corrections. She had conducted an evaluation of respondent to determine whether he satisfied the criteria of the Act. Dr. Ransom reviewed respondent's records, but he indicated his unwillingness to be interviewed.

¶ 13    Based on a review of his criminal history and other records, Dr. Ransom testified that respondent had a "clear sexually deviant arousal pattern," *i.e.*, he repeatedly went to the same location, identified women who were walking alone, and threatened or engaged in violent behavior. Dr. Ransom diagnosed respondent with paraphilia not otherwise specified – non-

4

consenting females; alcohol abuse; and personality disorder not otherwise specified with antisocial features. She used actuarial tools to assess respondent's risk of reoffending; his scores placed him in the high-risk category. Dr. Ransom opined that respondent's age (in his 50s at the time) was not a protective factor, given that he committed a sexual offense in his mid-40s and that his medical history did not suggest any condition which would prevent him from reoffending. Dr. Ransom concluded that respondent met the criteria to be an SVP under the Act.

¶ 14　　The jury returned a verdict finding respondent to be an SVP, and the circuit court entered judgment on the verdict. Respondent was ordered committed to DHS for institutional care in a secure facility. The circuit court denied his motion for a new trial, and respondent appealed. The judgment was affirmed on appeal (*In re Commitment of Butler*, 2013 IL App (1st) 113606).

¶ 15　　　　　　　　　　　*2020 and 2021 Proceedings*

¶ 16　　Section 55 of the Act (725 ILCS 207/55 (West 2020)) requires DHS to submit a written report to the circuit court on the committed person's mental condition at least once every 12 months after his initial commitment for the purpose of determining whether (1) the person has made sufficient progress in treatment to be conditionally released and (2) the person's condition has so changed since the most recent periodic reexamination that he is no longer an SVP. The instant consolidated appeals relate to the 2020 and 2021 reports and related matters.

¶ 17　　In February 2020, Dr. Suire performed an evaluation of respondent and prepared a report as required by the Act. Based on the report, the State filed a motion for a status hearing to determine whether there was probable cause to warrant an evidentiary hearing to determine whether respondent was still an SVP. In preparing his report, Dr. Suire conducted an interview with respondent and reviewed his previous psychological evaluation and his DHS treatment and progress reports. Dr. Suire's report addressed respondent's personal history, his participation in

DHS sex-offender treatment, his criminal charges and convictions, and his mental health history.

¶ 18    Dr. Suire's report provided, in part, as follows.  He diagnosed respondent with multiple disorders, including other specified paraphilic disorder (OSPD) – non-consenting females, and antisocial personality disorder.  Using an actuarial tool known as Static-99R, respondent's score was a 5, which placed him in the above-average risk category.  Dr. Suire noted that respondent had certain empirical risk factors, *e.g.*, hostility, substance abuse, and deviant sexual interest.

¶ 19    Dr. Suire reported that respondent consistently participated in sex-offender treatment during the prior year.  According to Dr. Suire, respondent presented as a "motivated and effective group member" who continued to make progress in phase III of a five-phase treatment program.  Although Dr. Suire characterized respondent's group work as "generally good," he noted that respondent struggled with certain concepts and tended to be excessively accepting of peer comments, possibly stemming from a desire to avoid conflict.  While respondent had violations in 2017 for battery and 2018 for fighting, he had not demonstrated any physical aggression during the prior year.  Dr. Suire opined that respondent could be approaching a point where conditional release was appropriate, but he noted that respondent still had significant treatment goals to complete, including "Relapse Prevention" and a "Good Lives Plan."

¶ 20    After discussing various studies regarding the correlation between an offender's age and sexual recidivism, Dr. Suire concluded that respondent's Static-99R score already accounted for his age, and thus a further reduction in his estimated risk did not appear to be warranted.

¶ 21    Dr. Suire ultimately concluded that respondent had not made sufficient progress in treatment to be conditionally released.  He further concluded that respondent's condition had not so changed since the most recent periodic reexamination that he was no longer an SVP.

¶ 22    In March 2020, respondent filed a motion to appoint psychologist Dr. Brian Abbott as his

expert pursuant to section 55(a) of the Act.[2]  Respondent also filed a petition for discharge or, in the alternative, conditional release.

¶ 23    In the motion to appoint Dr. Abbott as his expert, respondent asserted that changes in professional knowledge since his initial commitment demonstrated that he was no longer dangerous and that he no longer had a mental disorder.  He also argued that in *In re Detention of Kelley*, 2019 IL App (1st) 162184, this Court found that a respondent's older age supported a finding of probable cause to believe he was no longer an SVP.  Respondent represented that Dr. Abbott would testify that Static-99R did not fully account for his age and that new research had concluded that dynamic risk factors do not increase an individual's propensity to reoffend sexually beyond that determined by actuarial measures.

¶ 24    In orders entered on September 9, 2020, the circuit court (a) denied respondent's motion to appoint Dr. Abbott, (b) found that no probable cause existed to warrant a further evidentiary hearing regarding conditional release or discharge, and (c) granted respondent leave to withdraw his petition for discharge or, in the alternative, conditional release.  The circuit court found, in part, that respondent had not made sufficient progress in treatment to be conditionally released and that his condition had not so changed since the most recent periodic reexamination that he was no longer an SVP.  Respondent timely filed an appeal (appeal number 1-20-1107) challenging the granting of the State's motion for finding of no probable cause and denial of his motion to appoint Dr. Abbott.

¶ 25    In February 2021, the State filed a motion for periodic review/status of finding of no probable cause based on the 2021 reexamination report.  The State represented that Dr. Suire's

---

[2] Section 55(a) provides, in part: "At the time of a reexamination under this Section, the person who has been committed may retain or, if he or she is indigent and so requests, the court may appoint a qualified expert or a professional person to examine him or her."  725 ILCS 207/55(a) (West 2020).

professional opinion in his 2021 report was that respondent should continue to be found an SVP under the Act, that he had not made sufficient progress in treatment to be conditionally released, that his condition had not so changed since his most recent examination that he is no longer an SVP, and that he should remain committed to the DHS treatment and detention facility.

¶ 26 Dr. Suire's report in 2021 was substantially similar to his report in 2020 as to respondent's diagnoses and risk factors. Dr. Suire observed that respondent overall was "doing quite well" in treatment. He noted, however, that respondent continued to have several major treatment objectives to achieve, including completing a systematic plan for combatting risk factors (Relapse Prevention Plan) and a similar plan for attaining his emotional and other needs in appropriate ways (Good Lives Plan). Dr. Suire opined that "treatment progress is not yet an adequate factor" for respondent. While Dr. Suire acknowledged that respondent's progress toward the completion of his formal treatment goals was likely slowed by factors outside of respondent's control (*e.g.*, COVID-19 restrictions), he believed that respondent "making further progress toward the completion of a systematic understanding of his risk factors and interventions is advisable prior to recommending him for Conditional Release."

¶ 27 In April 2021, respondent filed a motion to appoint Dr. Abbott to conduct an examination, as well as a petition for discharge or, in the alternative, conditional release. In addition to the arguments advanced in his prior motion to appoint Dr. Abbott, respondent asserted, in part, that the Act does not require sex offender treatment for a committed person to be discharged and that no specific amount of sex offender treatment is required to obtain conditional release.

¶ 28 In orders entered on June 2, 2021, the circuit court (a) denied respondent's motion to appoint Dr. Abbott, (b) found that no probable cause existed to warrant a further evidentiary

hearing regarding conditional release or discharge, and (c) granted respondent leave to withdraw his petition for discharge or, in the alternative, conditional release. Respondent filed a motion to reconsider the denial of his motion to appoint Dr. Abbott and the court's finding of no probable cause. The motion included a 2017 affidavit of Dr. David Thornton, one of the co-authors of Static-99R and other actuarial instruments. The motion suggested that Dr. Thornton had found that the actual recidivism rate for individuals over the age of 60 who had committed an offense between the ages of 50-59 was lower than the estimated rate predicted by Static-99R. The circuit court denied the motion to reconsider, and respondent filed a timely notice of appeal (appeal number 1-21-0753).

¶ 29    Pursuant to an order of this Court, respondent's appeals of the 2020 and 2021 circuit court orders have been consolidated.

¶ 30                                    ANALYSIS

¶ 31    Respondent advances two primary arguments on appeal. First, he contends that the circuit court abused its discretion in denying his motions to appoint Dr. Abbott. Second, respondent asserts that the circuit court erred in finding no probable cause to hold an evidentiary hearing in 2020 or in 2021. We address each argument in turn.

¶ 32                        *Denial of Motions to Appoint Dr. Abbott*

¶ 33    While the Act allows for the appointment of an expert for an indigent individual, it does not require a court to take such action. *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 33. "A respondent may be entitled to funds to hire an expert witness where expert testimony is deemed 'crucial' to a proper defense." *Id.*, citing *People v. Botruff*, 212 Ill. 2d 166, 177 (2004). "This is established where the respondent demonstrates that his case will be prejudiced if his request is denied." *Id.* The decision whether to appoint an independent examiner like

Dr. Abbott rests within the sound discretion of the trial court. *Id.*

¶ 34    The Act defines an SVP as "a person who has been convicted of a sexually violent offense *** who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2020).  A mental disorder is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2020).  In this case, Dr. Suire diagnosed respondent with OSPD – *i.e.*, other specified paraphilic disorder, non-consenting females – and other mental disorders.

¶ 35    Respondent asserts that Dr. Suire failed to acknowledge new research that undermines the reliability or accuracy of his OSPD diagnosis, and that Dr. Abbott would have testified that changes in professional knowledge regarding OSPD demonstrate that respondent no longer suffers from a mental disorder.  This court has consistently found, however, that OSPD is generally accepted in the psychiatric and psychological communities.  See *In re Commitment of Adams*, 2021 IL App (1st) 182049, ¶ 56.  See also *In re Detention of Hayes*, 2015 IL App (1st) 142424, ¶ 30 (noting that "[w]e recognize that the unspecified paraphilic disorder has been criticized by experts in the field of psychiatry, but the mere fact that the diagnosis has been the subject of debate does not warrant the conclusion that it is no longer generally accepted").  It was not crucial for the circuit court to hear testimony that OSPD is not a valid diagnosis when that contention has been expressly rejected by Illinois courts.

¶ 36    We are also unpersuaded that Dr. Abbott's proposed testimony regarding respondent's age and the use of Static-99R could support a plausible account that he is no longer substantially probable to reoffend.  None of Dr. Abbott's proposed testimony specifically relates to respondent as an individual.  Rather, the proposed testimony would address, in part, generic disagreement

regarding the predictive ability of Static-99R.[3]  Even if we disregard the Static-99R method of calculating risk, however, Dr. Suire's reports detail other troubling facts regarding respondent's particular status as an SVP.  For example, in both his 2020 and 2021 reports, Dr. Suire listed several additional risk factors that led to his ultimate determination that respondent was at a substantial probability to engage in acts of sexual violence, *e.g.*, deviant sexual interest, hostility, substance abuse, and attitudes tolerant of sex crimes.  Respondent has not demonstrated that the appointment of Dr. Abbott was crucial to his defense.  See *Kirst*, 2015 IL App (2d) 140532, ¶ 37.

¶ 37     Respondent also contends that Dr. Suire's report was deficient as he failed to recommend conditional release despite respondent's treatment progress and lack of disciplinary issues in recent years.  Respondent represented that, if appointed, Dr. Abbott would conduct an examination which would more fully account for respondent's progress.  This generic representation, however, does not adequately support the appointment of an expert.  *E.g.*, *Botruff*, 212 Ill. 2d at 177-78 (finding insufficient respondent's counsel's argument that an independent evaluator would "rebut the findings" in the tendered evaluation report).

¶ 38     Based on the foregoing, we conclude that the circuit court did not abuse its discretion in denying respondent's motions to appoint Dr. Abbott as his expert.

¶ 39                         *Findings of No Probable Cause*

¶ 40     A respondent bears the burden of establishing probable cause.  *In re Commitment of Canada*, 2018 IL App (4th) 170511, ¶ 35.  See also *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 67 (noting that a respondent bears the burden to provide sufficient evidence to warrant a hearing on whether he remains an SVP).  In order to receive an evidentiary hearing under

---

[3] We observe that, despite respondent's suggestion to the contrary, the affidavit of Dr. Thornton appended to respondent's motion for reconsideration appears to support reliance on Static-99R risk estimates.

section 65(b)(2) of the Act (725 ILCS 207/65(b)(2) (West 2020)), the circuit court must find a plausible account exists that the respondent is no longer an SVP. *In re Detention of Kelley*, 2019 IL App (1st) 162184, ¶ 53. "To satisfy this standard, respondent was required to present evidence that he no longer meets the elements for commitment in that he (1) no longer has a mental disease or (2) is no longer dangerous to others because his mental disorder no longer creates a substantial probability that he will engage in acts of sexual violence." *In re Commitment of Galba*, 2017 IL App (3d) 150613, ¶ 11. If the court finds probable cause to believe that the committed person is no longer an SVP, it must set a hearing on the issue, and the State has the burden of proving by clear and convincing evidence that the person is still an SVP. *Kelley*, 2019 IL App (1st) 162184, ¶ 53.

¶ 41　The question of whether there is probable cause to believe that a respondent is no longer an SVP so as to warrant an evidentiary hearing is subject to *de novo* review. *In re Commitment of Rendon*, 2017 IL App (1st) 153201, ¶ 19; *Canada*, 2018 IL App (4th) 170511, ¶ 36.

¶ 42　Dr. Suire reported that respondent is still an SVP. He diagnosed respondent with multiple mental disorders and opined that he was subject to other risk factors. Dr. Suire detailed respondent's extensive criminal history which spanned the course of decades, including reoffending while in his mid-40s after repeated incarcerations. We further note that the circuit court expressed concern regarding respondent's inconsistent references to additional victims (other than the victims of the crimes for which he was arrested and convicted). In 2014, he indicated that there were 5 additional victims, whereas in 2016, he indicated that there was a total of 15 sexual assaults. While the presence or absence of prior convictions is certainly not dispositive, the presentation of evidence that respondent committed acts meeting the appropriate diagnostic criteria for a mental disorder is relevant. *E.g.*, *In re Detention of Hardin*, 238 Ill. 2d

12

33, 51 (2010).

¶ 43    The fact that respondent is in his 60s is also not a change which should result in a finding of probable cause.  Dr. Suire considered respondent's age in his explanation of protective factors and in his discussion of age-related recidivism and its effect on respondent's risk of reoffending.  Furthermore, although respondent had not been cited for sex-related violations during his commitment, he had been disciplined for battery and fighting – both while he was in his 60s.  Dr. Suire noted in his 2020 and 2021 reports that "[w]hile it is unlikely that he is as able as he was in the past to physically aggress against others as he was when younger, it is obvious that the potential and inclination for him to do so remains present, or at least did fairly recently."  Respondent failed to demonstrate that his age is a sufficient change to warrant probable cause.

¶ 44    As Dr. Suire and the circuit court acknowledged, respondent has made progress during his treatment in recent years.  However, the fact remains that respondent was in phase III of a five-phase sex offender treatment program in 2019; he remained in phase III in 2020 and in 2021.  According to Dr. Suire, respondent has not yet developed a Relapse Prevention Plan and a Good Lives Plan.  While we recognize that respondent has made *some* progress in treatment, he has failed to demonstrate that he has made *sufficient* progress as required under the Act.  See *Canada*, 2018 IL App (4th) 170511, ¶ 42; *Galba*, 2017 IL App (3d) 150613, ¶ 13.

¶ 45    For the foregoing reasons, we affirm the orders of the circuit court finding no probable cause to hold an evidentiary hearing pursuant to the Act in 2020 or in 2021.

¶ 46                                   CONCLUSION

¶ 47    The judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 48    Appeal number 1-20-1107:  Affirmed.

¶ 49    Appeal number 1-21-0753:  Affirmed.